**Douglas Harold HIBSHMAN**

v.

**STATE of Indiana.**

No. 3–784A202.

Court of Appeals of Indiana,
Third District.

Jan. 14, 1985.

Susan K. Carpenter, Public Defender of Ind., M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Michael Gene Worden, Deputy Public Defender, Indianapolis, for appellee.

GARRARD, Judge.

Douglas Hibshman (Hibshman) was tried by jury and was convicted of robbery, a Class C felony. His appeal challenges the sufficiency of the evidence and contends that the trial court committed fundamental error by instructing the jury pursuant to IC 35–41–3–5:

> "You are instructed that voluntary intoxication is not available as a defense to a charge of robbery."

Admittedly no objection was made to the instruction at trial, nor was this challenge raised in the motion to correct errors. Nevertheless, Hibshman asserts giving the instruction constituted fundamental error due to the Indiana Supreme Court's decision in *Terry v. State* (1984), Ind., 465 N.E.2d 1085.[1]

The defendant in *Terry* was charged with and convicted of attempted murder. The evidence indicated that Terry, the vic-

---

1. Hibshman was tried on January 9–11, 1984. The *Terry* case was decided July 9, 1984. The instruction was appropriate under *Poe v. State* (1983), Ind., 445 N.E.2d 94 at the time of Hibshman's trial.

tim, and several others had been drinking for several hours before a fight broke out and Terry attacked the victim with a knife.

On appeal Terry contended the trial court had erred when it refused a final instruction he tendered concerning voluntary intoxication. Writing for the majority the Chief Justice expressly referred to his separate concurring opinion in *Sills v. State* (1984), Ind., 463 N.E.2d 228, and noted that in any offense requiring intent, or *mens rea*,[2] any factor which serves to negate the existence of that intent must be considered by the trier of fact in determining guilt. 465 N.E.2d 1088. The opinion proceeds by stating:

"Historically, facts such as age, mental condition, mistake or intoxication have been offered to negate the capacity to formulate intent. The attempt by the legislature to remove the factor of voluntary intoxication, except in limited situations, goes against this firmly ingrained principle. We thus hold Ind.Code Section 35–41–3–5(b) is void and without effect."[3]

465 N.E.2d 1088.

Finally, observing that "[t]he potential of this defense should not be confused with the reality of the situation," the court held that the trial court did not err in refusing the instruction because upon the evidence that Terry drove a car, gave directions to others and made decisions on a course of action for himself, "no reasonable doubt existed that the appellant had the intent to commit the act for which he was charged." 465 N.E.2d 1088.

We commence by noting that Hibshman's conviction was in the process of direct appeal when *Terry* was decided. He is there-

fore entitled to the benefit of whatever change *Terry* declared. *See, e.g., Linkletter v. Walker* (1965), 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601; *Burnett v. State* (1981), Ind., 426 N.E.2d 1314.

While it may be observed that the court's statement in *Terry* that the voluntary intoxication defense statute is invalid is dictum, it is a dictum that has been four times repeated since *Terry* was handed down. *Butrum v. State* (1984), Ind., 469 N.E.2d 1174; *Anderson v. State* (1984), Ind., 469 N.E.2d 1166; *Zachary v. State* (1984), Ind., 469 N.E.2d 744; *Murphy v. State* (1984), Ind., 469 N.E.2d 750. Moreover, while the *Terry* court did not expressly determine that in operation IC 35–41–3–5(b) violated any specific provision of our state or the federal constitution, that must be deemed an oversight. The mere fact that the legislature chooses to enact statutes which conflict with common law principles, of course, furnishes no basis for refusing their effect.[4]

■ In *Terry, Butrum, Anderson, Murphy, Zachary* and here the accused was prosecuted for an offense, as defined by the legislature, which included as an element of the crime that the actions proscribed were committed "intentionally" or "knowingly."[5] As the court observed in *Terry*, if a person charged with such an offense is so *non compos mentis* as to be incapable of forming the required intent, then he is not guilty. The court amplified this in *Butrum* where, as here, the issue was whether the court erred by instructing the jury that "[v]oluntary intoxication is not a defense to the crime of ...." Again writing for the majority the Chief Justice said:

---

**2.** The concurring opinion in *Sills* suggests an analysis whereby so-called "strict responsibility" offenses contain an implied *mens rea*. We need not enter that debate for the purposes of this opinion.

**3.** The statutory section states:

"Voluntary intoxication is a defense only to the extent that it negates an element of an offense referred to by the phrase 'with intent to' or 'with an intention to.'"

**4.** The *Sills* opinion cites *Smith v. California* (1959), 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 but *Smith* declared an ordinance which omitted *mens rea* invalid because it impinged upon free speech and free press guarantees of the first amendment.

**5.** *In seriatum* the prosecutions were for attempted murder, murder, robbery, rape and criminal deviate conduct, rape and criminal deviate conduct, and robbery.

"The trial judge was correct, in his ruling in the case at bar, that it is not intoxication that is a defense, but rather that intoxication may be considered as would any other mental incapacity of such severe degree that it would preclude the ability to form intent."

469 N.E.2d at 1176.

██ Thus, it seems inescapable that where the legislature has defined a criminal offense *to include* the elements of intentionally or knowingly, it would violate fundamental fairness, i.e. due process, to preclude the jury from considering evidence relevant to that issue of intent merely because it arose in the context of voluntarily induced intoxication.

Having determined this much, we turn to the question of whether the doctrine of fundamental error should be invoked. The more recent decisions of our Supreme Court define fundamental error as error that if not corrected will deny to the accused fundamental due process of law; the error "must constitute a clearly blatant violation of basic and elementary principles." *Reynolds v. State* (1984), Ind., 460 N.E.2d 506, 508; *Burkes v. State* (1983), Ind., 445 N.E.2d 983; *Warriner v. State* (1982), Ind., 435 N.E.2d 562.

In *Terry* the trial court refused to give the defendant's tendered instruction although there was evidence that he had been drinking. The majority held that the refusal was not error because under the evidence there could be no reasonable doubt that the accused was *capable* of forming the necessary intent. Thus, the jury could properly determine the factual question of intent on the basis of the court's instructions and the evidence without the necessity of an instruction concerning intoxication.

In *Butrum, Murphy* and *Zachary* the trial court gave instructions *over timely objection* that were identical to the instruction given here, except as to the identity of the offense to which the instruction applied. In each case there was evidence that the accused had been drinking. Additionally, in each there was evidence that whatev-

er his state of intoxication the defendant was not so intoxicated as to be incapable of forming the necessary intent. Thus, *Butrum* held there was no error in giving the instruction when it was construed with the court's instruction concerning mental disease or defect and the court's other final instructions. *Murphy* and *Zachary* both held that any error in giving the instruction was harmless.

In Hibshman's case the evidence of his intoxication was extensive. It appears that on the day of the offense the victim had himself been drinking more or less throughout the day at the Frontier Inn. About 10:00 a.m. Connie Hibshman (Connie) and Hibshman went to the Frontier Inn to drink with a friend named Blackie. While Hibshman remained in Blackie's room, Connie visited the rooms of several persons she knew and continued drinking. Sometime during the evening Hibshman and Connie made plans to rob Robert Ruff with whom Connie had been drinking during the afternoon. Hibshman entered the room where Connie was waiting with Ruff, pushed Ruff aside and demanded his money. According to Ruff, who could not recall much of what happened, Hibshman held him down while the woman took his billfold. According to Connie, who testified for the state pursuant to a plea agreement, Hibshman pushed Ruff to the floor and scuffled with him while Connie took his wallet from his pocket. She testified that Hibshman wiped the wallet of fingerprints after the money had been removed. The two then left by the fire escape. They went to a nearby bar where Connie purchased two bottles of vodka and called a taxi. Hibshman drank one of the half pint bottles on the spot. Shortly thereafter he "passed out" and later two motels refused to allow the pair to register because of Hibshman's intoxication. Additionally there was evidence that as late as 5:00 p.m. that evening Hibshman was seen by others who did not consider him to be drunk.

██ Hibshman now argues that the court's instruction could be taken by the jury to mean that they were not to consider

his degree of intoxication for any purpose whatever. Significantly, he does not suggest that any such argument was attempted by the state during final argument, nor is there any suggestion that the court precluded the jury from hearing any of the evidence concerning his intoxication.

The court instructed the jury upon the elements of robbery, the meaning of the terms "intentionally" and "knowingly" and the state's burden of proof. It also instructed the jury that while the state was not required to prove intent as a fact by direct positive evidence, it was the state's burden to prove beyond reasonable doubt that the crime charged was committed by the defendant with the felonious intent charged in the information.

The jury was properly instructed concerning the element of intent and the state's burden of proof. Contrary to Hibshman's argument, we believe, as did the court in *Butrum*, that the intoxication instruction when considered with the court's other final instructions might reasonably be understood by the jury to mean merely that Hibshman could not excuse his commission of the offense simply by evidence that he was to some degree intoxicated when the crime was committed. *See also Anderson v. State, supra*. That is a correct statement of the law. In sum, Hibshman's counsel was free to argue to the jury under the evidence and the final instructions given by the court that Hibshman was not guilty because he was incapable of forming the necessary intent, or that, at least, there was a reasonable doubt concerning that element of the crime.

Of course, since *Terry*, the instruction should not be given in the quoted form over proper objection, since we agree with Hibshman that its precise meaning is unclear. We can, however, determine without hesitation that in Hibshman's case the reading of the instruction did not constitute a clearly blatant violation of such fundamental principles as to result in a denial of fundamental due process. Accordingly, no reversible error was committed when the court gave the instruction without objection.

Additionally, Hibshman argues that the evidence was insufficient to sustain the conviction. We disagree. From our previous recitation of the evidence it is apparent that the jury could have concluded that Hibshman was capable of and did form the necessary intent to commit the crime of robbery even though he later became so intoxicated as to lose consciousness.

He also argues that Connie's testimony was so inherently incredible because of her plea agreement as to be incapable of belief. This ignores the corroboration supplied by Hibshman's own inculpatory statement to the police. Moreover, the plea agreement was disclosed to the jury. It was for them to determine the weight and credibility to be given Connie's evidence. We cannot say the testimony was so improbable as to be incapable of belief by any reasonable juror.

Affirmed.

STATON, P.J., concurs in Result.

HOFFMAN, J., concurs.