**Tommie G. TILLER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 68S00–8607–CR–00653.**

Supreme Court of Indiana.

July 26, 1989.

Susan K. Carpenter, Public Defender, June E. Oldham, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Tommie G. Tiller was convicted following a jury trial in the Randolph Circuit Court of the crime of Attempted Voluntary Manslaughter and was sentenced to a term of sixteen (16) years.

Seven issues are presented for our review in this direct appeal:

1. error of the trial court in refusing Tiller's tendered Final Instruction Nos. 4, 5, and 6, and in giving the court's Final Instruction No. 13;

2. error in refusing evidence in regard to the intoxication defense;

3. refusal of Tiller's tendered final instruction No. 1;

4. admission into evidence of Tiller's taped statement;

5. imposition of manifestly unreasonable sentence;

6. sufficiency of the evidence; and

7. error in admission of State's Exhibits 4 and 18.

The evidence revealed that prior to the time of this incident Christine Hamilton was Tommie Tiller's girlfriend. Thomas Wayne Arnett, the victim, had recently been released from prison and established

a relationship with Christine Hamilton. Hamilton had broken off her relationship with Tiller. About noon on August 31, 1985, Tiller drove to Hamilton's home. He stated that his intention in going there was to hire Hamilton's son to do some yard work for him. Tiller stopped in the driveway and encountered Arnett who was at that time working on Hamilton's yard. Arnett approached Tiller's car and struck him in the face through the window. He then told Tiller to either get out or go on down the road. Tiller started to get out of the car but Arnett kicked him and set him back on the seat. Tiller then drove away but shouted to Arnett that he was going to make him pay. Tiller telephoned Arnett several times that day and threatened him. Tiller then returned to Hamilton's home, brandished a gun and threatened to kill Arnett.

Shortly thereafter, Arnett and Hamilton decided to go to the laundromat to do their laundry. Hamilton was driving. Her son, Buddy Hamilton, was on a motorcycle with his wife, Dawn, when he saw Tiller trailing Hamilton and Arnett. Next, Tiller pulled in front of Hamilton's car and blocked it. Tiller walked up to the Hamilton car with his hands behind his back. According to Buddy Hamilton, Arnett told Tiller, "You take another step and I'll blow you away." Tiller responded, "You might as well pull it, because one of us is going to die." Arnett got out of his car and threw a "pop" bottle which struck Tiller on the side of the face. Arnett bent down and turned to run to the back of the Hamilton car when Tiller shot him. Hamilton testified Tiller then went to Arnett and said he should finish him off. Tiller threw the gun in nearby weeds and the gun fired again when it struck the ground. The bullet which hit Arnett lodged in his spine in an area where it could not be removed. The injury caused him to be permanently paralyzed from the waist down. Officer Mark Anderson was at the scene immediately and stopped Tiller from leaving. Tiller told him he did not shoot anyone but had thrown a firecracker into the weeds. The testimony of Christine Hamilton and Arnett generally corroborated the events as Buddy Hamilton had given them.

Tiller testified in his own behalf, giving a different account in some respects. He claimed he just happened to come upon the Hamilton vehicle in traffic and was following it for awhile. He said he then went around the vehicle in order to get away from them because Arnett was trying to taunt him, but as he passed and got a short distance in front of them, his automobile stalled and he could not get it started. He claimed the Hamilton vehicle then stopped behind him and Arnett got out of the car and threatened him. He thought Arnett had a gun in his hand. Tiller said he got out his gun in order to protect himself and Arnett then struck him in the face with a "pop" bottle. Tiller said that the instant he was hit, his reflexes caused him to pull the trigger and fire the shot that hit Arnett. He stated he did not aim at Arnett or intend to shoot him and did not even realize he had hit him. Tiller claimed that, from the time of the confrontation at the Hamilton home until the shooting, he drank seven or eight beers.

There was evidence that Tiller called the police after the first incident with Arnett at Hamilton's home. He was unable to receive immediate satisfaction from the police and threatened to "take care of it by himself." The police told him they could not come out immediately but would look into it when they had a chance and asked him not to take the law into his own hands.

At the time of Tiller's arrest, Officer Anderson stated it was apparent Tiller had been drinking but he did not think Tiller was intoxicated. About two hours after the incident a breathalyzer test indicated Tiller had a blood alcohol content of .14%. About an hour or two after that, Tiller gave a statement to the police. The police officers testified he did not appear intoxicated at that time.

I

The first issue raised by Tiller concerns the refusal of the trial court to give three instructions he tendered on the subject of voluntary intoxication and error in the giv-

ing of the one instruction the trial court gave on the subject.

■ The well established rule in determining whether a tendered instruction has been properly refused considers whether: 1) the tendered instruction correctly states the law; 2) there is evidence in the record to support the giving of the instruction; and 3) the substance of the tendered instruction is covered by other instructions which are given. *Garbison v. State* (1988), Ind., 528 N.E.2d 1126, 1128; *Davis v. State* (1976), 265 Ind. 476, 478, 355 N.E.2d 836, 838. Tiller's tendered instructions were as follows:

### INSTRUCTION NO. 4

If a person, who is charged with an offense which includes as an element of the crime that the actions proscribed were "knowingly", [sic] is of such unsound mind through voluntarily induced intoxication as to be incapable of forming the required intent, then he is not guilty.

*Hibshman v. State* (1985) 472 N.E.2d 1276.

---
Defendant's Attorney

GIVEN___
REFUSED_x_

/s/ Zane Stohler
Judge

*Record* at 49.

### INSTRUCTION NO. 5

The defense of intoxication is defined by law as follows:

It is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, if the intoxication resulted from the introduction of a substance into his body without his consent or when he did not know that the substance might cause intoxication.

Voluntary intoxication is a defense only to the extent that it negates specific intent.

---
Defendant's Attorney

■

GIVEN___
REFUSED_x_

/s/ Zane Stohler
Judge

*Record* at 50.

### INSTRUCTION NO. 6

In order to convict the Defendant of the crime of murder, it is necessary to satisfy the jury beyond a reasonable doubt that the Defendant entertained the specific intent to commit the crime of murder. Mere drunkenness does not excuse the offense; but intoxication may be so extreme that a person is incapable of forming or entertaining a specific intent. If the evidence shows that the Defendant was intoxicated at the time of the alleged offense, the jury should consider his state of intoxication in determining if Defendant had such specific intent.

If from all the evidence you have a reasonable doubt whether the Defendant was capable of forming such specific intent, you must give the Defendant the benefit of that doubt and find that he did not have such specific intent.

---
Defendant's Attorney

GIVEN___
REFUSED_x_

/s/ Zane Stohler
Judge

*Record* at 6.

Clearly, Instruction No. 5 was properly refused because there was no evidence that intoxicants were introduced into Tiller's body without his consent or his knowledge that the substance might cause intoxication. His own testimony was that he voluntarily drank seven or eight beers, and there was a great deal of testimony that Tiller was in the habit of drinking beer, often to the extent of intoxication. Although Instruction Nos. 4 and 6 properly state the law, they must be tested on the question of whether the evidence showed Tiller was so intoxicated he was not able to form an intent and whether the trial court

gave another instruction reciting the law in a similar manner.

■■ The trial court did give Final Instruction No. 13 which provided as follows:

## FINAL INSTRUCTION NO. 13

Voluntary intoxication is a defense only to the extent that it negates a specific intent. If you find from the evidence that the defendant at the time of the alleged offense was so extremely intoxicated that he was incapable of forming or entertaining a specific intent, he could not be found guilty of intentionally shooting Thomas Wayne Arnett as alleged. However, he could be found guilty of knowingly shooting Thomas Wayne Arnett even if he was extremely intoxicated and incapable of forming or entertaining an intent to shoot.

*Record* at 72.

Instruction No. 13 generally covers the subject matter of Tiller's tendered Instructions No. 4 and No. 6. Accordingly, the refusal to tender Instructions 4 and 6 was not error. The last sentence of Instruction No. 13 is confusing and could be read to be contradictory to the rest of the instruction. The last sentence says Tiller could knowingly shoot Arnett even though he was incapable of forming or entertaining an intent to do so. However, the record shows Tiller did not object to the giving of the court's Instruction No. 13, and therefore waived any claim of error regarding its content. *Blackmon v. State* (1983), Ind., 455 N.E.2d 586, 589–90; *Hibshman v. State* (1985), Ind.App., 472 N.E.2d 1276.

Tiller's failure to object to Instruction No. 13 is particularly significant here because the language of his tendered instructions was substantially covered in Instruction No. 13. In other words, if the court had given his instructions along with its own No. 13, the same alleged disability would have existed in the last line about which he now complains.

■ Equally significant is the question of whether the evidence supported the contention that Tiller was so intoxicated he was unable to form an intent to commit the crime supporting his conviction. Tiller relies on evidence which showed he drank seven or eight beers prior to the incident, and approximately two hours after the shooting he registered .14% of alcohol content in his blood. Furthermore, one of the witnesses testified he appeared drunk at the time of the shooting. However, the officer who arrested Tiller stated he smelled of alcohol but did not appear to be intoxicated. Several officers who were in his company after the incident stated he did not appear to be intoxicated and appeared to know what he was doing. One of the officers who took Tiller's statement three to four hours after the incident and was unaware of the .14% reading said he appeared to have all of his faculties and to fully understand discussions with the interrogating officers including the statement of his *Miranda* rights and his recounting of the events of that day. This evidence places in conflict the question of whether he was intoxicated but fails to show such a state of intoxication that he was unable to form an intent. In his own testimony before the jury, Tiller did not indicate he was so intoxicated he did not know what he was doing. His version of all the events of the day generally corroborated what the other witnesses said as to when, where, and how the confrontations took place, but he gave different versions of his and Arnett's participation in them. Either version of the events, those given by Arnett, Hamilton, and their witnesses, or the version given by Tiller, show that he was able to act deliberately and make decisions, drive an automobile, and recognize the situation he was in and respond to it. As Justice Givan stated in *Terry v. State* (1984), Ind., 465 N.E.2d 1085:

It is difficult to envision a finding of not guilty by reason of intoxication when the acts committed require a significant degree of physical or intellectual skills. As a general proposition, a defendant should not be relieved of responsibility when he was able to devise a plan, operate equipment, instruct the behavior of others or carry out acts requiring physical skill.

*Id.* at 1088.

Tiller did testify before the jury that he had a memory lapse as to events after the

shooting. He claimed he did not remember any of the events after that, including giving a statement to the police. However, he did not attribute even this memory lapse to heavy consumption of alcohol. He simply stated he did not remember what occurred after the shooting. Tiller cites this Court's decision in *Pavey v. State* (1986), Ind., 498 N.E.2d 1195, in which this Court reversed Pavey's conviction for failure to properly instruct on the defense of voluntary intoxication. However, the facts in *Pavey* differ from the instant case. The evidence in *Pavey* showed the defendant had consumed seventeen (17) to nineteen (19) beers during the period of approximately nine (9) hours before he killed his wife and one hour later a sample of his blood was found to contain a blood alcohol level of .17%. The evidence in *Pavey* showing the defendant's conduct and activities in the time span including the killing placed at issue his ability to form an intent. *Id.* at 1197.

In total, the evidence in the instant case indicates Tiller was not so intoxicated that he was unable to form an intent to commit the acts with which he was charged and convicted. Furthermore, even if Tiller had not waived objection to the giving of Final Instruction No. 13, the error, if any, contained in the last line of the instruction was harmless.

## II

Tiller claims the trial court denied him a fair trial by excluding evidence relating to voluntary intoxication. The question arose when Tiller called Larry Winningham, a member of the Sheriff's Department. The defense attempted to place into evidence Exhibit 5, a copy of a card above the breathalyzer machine at the Randolph County Jail, which showed the policy of the Sheriff's Department regarding release of individuals for various levels of test results. The witness identified the Exhibit and stated that it contained the policy of the Randolph County Sheriff's Department regarding the release of certain people who have been found to be under the influence of intoxicating liquor. He stated that if a person is held in jail who showed .14 of 1% alcohol in his blood, he could not be re-

leased for four hours. The court sustained an objection to this testimony at this point, finding it was irrelevant and immaterial. Tiller contends it was his intention to further examine the witness concerning these release periods for persons at various stages of intoxication. Further, Tiller wanted Winningham to testify on the rate of decrease of blood alcohol level in order to more precisely pinpoint Tiller's level of intoxication when the shooting took place and when he gave his statement to the police.

The trial court is accorded wide latitude in ruling on the relevance of evidence. *Wallace v. State* (1985), Ind., 486 N.E.2d 445, 460, *cert. denied* (1986), 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723; *Snider v. State* (1980), 274 Ind. 401, 405, 412 N.E.2d 230, 233. This latitude is vested in the trial court to determine the probative value of evidence in relation to its prejudicial impact. If the offered evidence is only marginally relevant, it is within the sound discretion of the trial court to determine its admissibility. *Wallace, supra;* *Chittenden v. State* (1982), Ind., 436 N.E.2d 86, 88. Additionally, although Tiller claims on appeal that Exhibit 5 and the further testimony of Winningham were relevant to show the amount of his intoxication at the time of the shooting and when he gave his statement to the police, Tiller merely stated at trial his Exhibit 5 was the Sheriff's policy statement for release time of persons with various blood alcohol levels. Tiller made no offer to prove what Winningham would testify to if permitted to do so. An offer to prove was necessary to make the trial judge aware of what evidence was being offered by the exhibit and the witness so that he might reconsider his ruling and, equally important, so that this Court could effectively review the ruling. An offer to prove is necessary to preserve error in the denial of admission of evidence on direct examination. *Wallace v. State* (1983), Ind., 453 N.E.2d 245, 248; *Springer v. State* (1982), Ind., 437 N.E.2d 998, 1001. Because Tiller did not make a proper offer to prove the content and, therefore, the relevancy of the evidence,

the trial court did not abuse its discretion in refusing to permit it into evidence. Further, the failure to make an offer to prove constitutes a waiver of the alleged error. *Wallace, supra; Springer, supra; Tope v. State* (1977), 266 Ind. 239, 247, 362 N.E.2d 137, 142, *cert. denied* (1977), 434 U.S. 869, 98 S.Ct. 209, 54 L.Ed.2d 146.

## III

■ Tiller tendered his Instruction No. 1 which proposed to tell the jury that battery is a lesser crime included in the crime of attempted murder. The trial court refused to give this instruction and Tiller claims it erred in doing so. Tiller acknowledges battery is not an inherently lesser included offense of attempted murder. *Johnson v. State* (1984), Ind., 464 N.E.2d 1309, 1310. He claims, however, that under the charging instrument and facts of this case, it still should have been considered a lesser included offense. Tiller bases his contention upon *Johnson, supra,* wherein this Court found that battery could be a lesser included offense of attempted murder if it were included within the crime charged in the charging instrument. The charging information in *Johnson* stated:

> knowingly or intentionally shot a round of live ammunition from a pistol he held in his hands at the victim and that the round of ammunition struck and wounded the victim.

*Id.* at 1311.

In the instant case the information states:

> did attempt to commit the crime of Murder by unlawfully, knowingly and intentionally shooting Thomas Wayne Arnett with a .25 automatic pistol, which conduct constituted a substantial step toward the commission of the crime of Murder.

*Record* at 7.

Unlike the charging information in *Johnson, supra,* the information in the instant cause does not include any of the elements of battery; it indicates an intention by the State to charge attempted murder only. Furthermore, the evidence was not such

that a trier of fact could reasonably find that battery was committed and attempted murder was not. Tiller's testimony at trial indicated a claim of self defense, accident, or intoxication. The evidence therefore did not support the giving of the tendered lesser included offense instruction. *Vincent v. State* (1986), Ind., 489 N.E.2d 49, 52–53; *Jones v. State* (1982), Ind., 438 N.E.2d 972, 976–77. The trial court did not err in refusing Tiller's tendered Instruction No. 1.

## IV

Tiller also asserts trial court erred in admitting his statement to police into evidence. He claims the State did not prove the statement was knowingly and voluntarily given. *Mincey v. Arizona* (1978), 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290; *Heald v. State* (1986), Ind., 492 N.E.2d 671, 677. In considering whether this burden has been met, we look at the totality of the circumstances to determine whether there have been any inducements by way of threats, violence, promises, or other improper influences. *Heald,* 492 N.E.2d at 677.

Tiller tested .14% blood alcohol content on a breathalyzer machine about two hours after his arrest. He claims he does not remember giving his statement or being given his *Miranda* warnings. However, police officers took his statement approximately two and one half hours after giving him the breathalyzer test, and, two times prior to giving his statement, he was given *Miranda* warnings. He was again so advised before he gave his statement, and he signed a waiver form. Officers testified that while Tiller smelled of alcohol he did not appear intoxicated. Also, evidence was presented which showed his blood alcohol level would have been substantially less than .14% at the time he gave his statement.

■ Tiller had the burden to produce evidence which showed the nature and amounts of intoxicants he ingested would cause his statement to be involuntary. *Wiseheart v. State* (1986), Ind., 491 N.E.2d 985, 992; *Lyons v. State* (1987), Ind.App.,

503 N.E.2d 928, 932. Although Tiller did present evidence of intoxication, he did not demonstrate his intoxication rendered his statement involuntary. At most, there is a conflict in the evidence as to the effect of intoxication on Tiller's mental faculties. It is for the trier of fact to determine the weight of the evidence and credibility of witnesses. *Sons v. State* (1987), Ind., 502 N.E.2d 1331, 1333.

In addition Tiller contends his *Miranda* warnings were improper because he was not advised during one of his advisements that he could stop the questioning at any time. This is not one of the advisements required under *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Also, Tiller was told his rights three different times and signed a waiver form indicating he understood his rights and waived them. Any possible error would therefore have been cured. We find no error here.

### V

Tiller next alleges trial court error in sentencing. Specifically he claims the court abused its discretion in failing to find certain mitigating circumstances and finding other aggravating circumstances.

The court sentenced Tiller to sixteen (16) years for Attempted Voluntary Manslaughter, a Class B felony which carries a presumptive sentence of ten (10) years. An additional ten years may be added to that for aggravating circumstances and four subtracted for mitigating circumstances. IC 35-50-2-5. Thus, the sentence imposed was within statutory limits. Therefore we will not revise the sentence unless it is manifestly unreasonable. *Bowling v. State* (1986), Ind., 493 N.E.2d 783, 787. A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which the sentence was imposed. *Id.* We cannot say the sentence imposed rises to that level.

Tiller cites *Gambill v. State* (1982), Ind., 436 N.E.2d 301 in support of his argument.

In that case the trial judge was openly hostile to the jury's verdict; at sentencing he plainly stated he considered the verdict to be erroneous. We do not have the same situation here. The language the trial judge used was more a statement regarding the seriousness of the crime and an explanation regarding the imposition of the sentence. *See Wilson v. State* (1984), Ind., 458 N.E.2d 654, 655-56. The trial court committed no error in sentencing.

### VI

Tiller next challenges the sufficiency of the evidence presented against him. The standard regarding sufficiency is clear: this Court neither reweighs the evidence nor judges the credibility of witnesses. We look only to that evidence most favorable to the State together with any reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the verdict, it will stand. *Bowling*, 493 N.E.2d at 785.

Although Tiller claims to have been so intoxicated he cannot remember portions of the day's events, police officers testified he did not appear intoxicated. Earlier in the day Tiller telephoned threats to Arnett. He also drove his car, cut off Arnett and Hamilton in traffic, and fired a gun, hitting a moving target. He threw the weapon in some nearby weeds and told police he had shot off a firecracker. Tiller did not stumble, sway, or show outward signs of drunkenness. He signed a waiver form and gave a taped confession to the crime. This evidence is sufficient to support the verdict.

### VII

Tiller lastly challenges the trial court's admission of State's Exhibits 4 and 18 into evidence. Exhibit 4 is the gun used in the shooting and Exhibit 18, the bullets found in the gun. Tiller claims that because the arresting officer could not positively identify the gun and because the gun was at the Indiana State Police laboratory for twenty-seven days, there was an inadequate showing of chain-of-custody. He

also claims the bullets were irrelevant and immaterial to the State's case.

With regard to the gun, Detective Midlam testified that when he arrived at the scene of the shooting, Officer Anderson gave him a gun of which he retained control except for the period the Indiana State Police laboratory had it. Midlam identified the serial number on Exhibit 4 as being the same as the one he recorded for the gun Officer Anderson gave him. Also, witnesses testified they saw Tiller throw the gun in some nearby weeds. Officer Anderson found the gun near the scene immediately after the shooting.

Tiller concedes that a gun is much less fungible than other items, and the less fungible the item, the less scrutiny the court will use regarding chain-of-custody. The issue will go to the weight of the evidence rather than its admissibility. *Boyd v. State* (1986), Ind., 494 N.E.2d 284, 297, *cert. denied* (1987), 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860.

Exhibit 18, the bullets found in the gun, was relevant and material in that it tended to show that when Tiller fired the gun he meant to kill Arnett. This is bolstered by the fact that witnesses heard Tiller threaten to finish off Arnett.

The State also points out that because Tiller did not explain or give a basis for his objection at trial or in his Motion to Correct Errors, he waived any possible error on this issue. *See Ashford v. State* (1984), Ind., 464 N.E.2d 1298, 1301; *Nunn v. State* (1983), Ind., 450 N.E.2d 495, 497.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

DICKSON, J., concurs in result without opinion.