**Anthony C. SMITH, a/k/a Tony C. Smith, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–9203–CR–00069.

Court of Appeals of Indiana,
Third District.

Nov. 16, 1992.

Charles E. Stewart, Jr., Crown Point, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for appellee-plaintiff.

HOFFMAN, Judge.

Appellant-defendant Anthony C. Smith appeals his convictions for three counts of murder. Smith was sentenced to three consecutive forty-year terms of imprisonment.

The evidence pertinent to the appeal discloses that on April 20, 1991, Milton Lewis was awakened by loud noises. When Lewis looked through the window, he observed Maury Bell lying on the steps in a pool of blood. Lewis called for emergency assistance; however, Bell died at the hospital.

Soon thereafter, police discovered Bell's vehicle parked at 426 Hovey Street, Gary, Indiana. Inside the residence, officers discovered the bodies of Robert McGuffin and Karl Calvert. Each had suffered fatal gunshot wounds.

Three days later, on April 23, 1991, Smith and Dominic Clark were arrested in Los Angeles, California for possession of an assault weapon. Smith and Clark were interviewed separately by Detective Kemblowski of the Los Angeles County Sheriff's Department. Kemblowski interviewed Clark first. Initially, Clark told Kemblowski that he and Smith obtained the assault weapon from "Little Man" at a Chicago apartment. Then, Clark told Kemblowski of the triple slaying.

Kemblowski next questioned Smith. Reading from an advice of rights card, Kemblowski advised Smith of his *Miranda* rights. After Smith related the "Little Man" story to Kemblowski, Kemblowski informed Smith that Clark spoke of a shooting in Gary, Indiana. Smith persisted in the "Little Man" story for approximately another five minutes. When Kemblowski again referred to Clark's statement, Smith paused for about 30 seconds. Smith then related information about the triple slaying after he inquired whether Clark was cooperating with the police.

At his trial, Smith moved to suppress his statement to Kemblowski. During the hearing, Smith alleged that he was not

given any *Miranda* warnings prior to his statement. Kemblowski testified that he read the *Miranda* warnings from a card. Kemblowski produced the card at the hearing. The trial court denied Smith's motion to suppress.

Also at trial during cross-examination, Kemblowski stated, "Then I told [Smith] that Clark told me that you guys didn't go to the projects." Smith objected. The trial court admonished the jury to disregard the statement.

As noted above, Smith was convicted on three counts of murder. This appeal ensued.

Smith raises two issues for review:

(1) whether the trial court erred in denying Smith's motion to suppress; and

(2) whether the trial court erred in denying Smith's motion for a mistrial.

■ First, Smith acknowledges that prior to his statement he was advised of his constitutional right to remain silent and to the services of an attorney. However, he complains that he was not advised that he had the right to stop the questioning at any time and to invoke his Fifth Amendment right to silence. Thus, according to Smith, his statement was improperly admitted into evidence.

The opportunity to stop questioning "is not one of the advisements required under *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694." *Tiller v. State* (1989), Ind., 541 N.E.2d 885, 893. Smith urges that *England v. State* (1985), Ind., 479 N.E.2d 1323, 1324, elevated the opportunity to stop questioning to a right which must be included within *Miranda* warnings.

In *England*, the court stated: "Appellant was not advised that if he could not afford an attorney one would be appointed for him prior to any questioning if he so desired *or* that he had the right to stop questioning at any time." *Id.* (Emphasis added.) The court then outlined the law regarding the admissibility of statements made during custodial interrogation. *Id.* The court stated that "blatant noncompliance with the *Miranda* procedural safeguards" rendered the statement inadmissible. *Id.*

Smith misconstrues the court's rendition of the facts with its reiteration of the law. The failure to advise the defendant in *England* implicitly referred to the right to have an attorney appointed rather than the opportunity to stop questioning. *See Miranda, supra,* 384 U.S. at 479, 86 S.Ct. at 1630 (opportunity to exercise rights must be afforded throughout interrogation).

The Supreme Court's later decision in *Tiller, supra,* stating that the opportunity to discontinue questioning is not an advisement required by *Miranda,* clarified the holding in *England.* No error occurred in denying Smith's motion to suppress his statement once a valid waiver of his rights was established.

■ Smith also attacks the trial court's denial of his motion for a mistrial. Smith contends that the portion of Kemblowski's testimony wherein he related a statement by Clark, a non-testifying accomplice, required the court to grant a mistrial. Kemblowski testified, "Then I told [Smith] that Clark told me that you guys didn't go to the projects." Smith requested an admonishment to the jury to disregard the statement. The trial court admonished the jury; however, it denied Smith's motion for a mistrial.

Even assuming that the testimony was improper, Smith fails to demonstrate any harm flowing from the statement. The statement was not facially incriminating and did not refer to any facts which formed the basis of the murder charges. *See Brock v. State* (1989), Ind., 540 N.E.2d 1236, 1240. Further, the jury had been presented with Smith's statement admitting that he did not obtain the assault weapon from an apartment in Chicago. *See Zachary v. State* (1984), Ind., 469 N.E.2d 744, 748. Smith has failed to present a ground for error.

There being no finding of reversible error, the convictions are affirmed.

Affirmed.

STATON and ROBERTSON, JJ., concur.