# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 12 2020, 10:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffery Haupt
Law Office of Jeffery Haupt
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lionel Wilburn, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff,* | March 12, 2020 <br><br> Court of Appeals Case No. 19A-CR-43 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable John M. Marnocha, Judge <br><br> Trial Court Cause No. 71D02-1801-F5-6 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Lionel Wilburn, Jr. was convicted of battery resulting in moderate bodily injury, a Level 6 felony. Wilburn was sentenced to thirty months, with six months to be served in the St. Joseph County Jail, twelve months to be served in St. Joseph County Community Corrections, and the remainder suspended to probation. Wilburn raises two issues on appeal concerning his sentence: 1) whether the trial court abused its discretion in sentencing him and 2) whether his thirty-month sentence is inappropriate in light of the nature of his offenses and his character. Concluding the trial court did not abuse its discretion and the sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] Wilburn and Shawna Nicodemus were involved in an on-again/off-again relationship for about two years but were "off again" as of the beginning of 2018. Christopher Gerber met Nicodemus at a New Year's Day party, and they began dating. Gerber spent the night at Nicodemus' house on January 6, 2018, and stayed throughout the next day. During the day on January 7, Wilburn sent a number of text messages to Nicodemus' phone, indicating his awareness of and unhappiness about Gerber's presence at her house.[1] Around

---

[1] For instance, at 4:40:26 p.m. on January 7, 2018, Wilburn texted Nicodemus and asked, "Who is he[?]" The Exhibits, Volume 3 at 93. At 4:40:55 p.m., he texted, "Yea I'm f***ing his sh*t up[.]" *Id.* And at 4:50:44 p.m., he texted, "Ok as soon as I see him I'm f***ing him [u]p[.]" *Id.* at 98.

5:00 p.m. that evening, Gerber was sitting on the side of the bed in Nicodemus'
bedroom and Nicodemus was in the attached bathroom when Wilburn came
into the room. Wilburn began yelling at Gerber to get out and both Gerber and
Nicodemus saw that Wilburn had a knife in his hand. Wilburn held the knife
near Gerber's face to scare him and then grabbed him around the neck and
struck him multiple times with his fist until Nicodemus intervened and Gerber
was able to get free. Gerber left the house without stopping to grab his phone
or wallet and ran to a neighbor's house. On the way, he noticed that three of
the tires on his truck were slashed. Wilburn eventually admitted that he had
slashed the tires. Gerber asked the neighbor to call the police, in part because
he had been beaten and in part because Nicodemus was still in the house and
he was afraid for her.

[3]     Gerber was taken by ambulance to the hospital. He suffered cuts, bruises, and
scratches to his face, neck, arms, and chest; bruised ribs; and two lacerations to
his left leg. The lacerations were approximately ten centimeters in length, total,
and although they were not deep wounds, they required sutures. Gerber did
not realize until he got to the neighbor's house that he had been cut. Wilburn
admitted to officers who responded to the scene that he had a knife, but stated
that he threw the knife down on the bed when he grabbed Gerber and started
hitting him and "the victim must have fallen on the knife and cut himself."
Transcript at 82. The emergency room doctor who treated Gerber opined that
"most wounds are usually caused by something happening directly. And, you
know, the likelihood that wound would happen because someone is rolling

around on a mattress would be not so likely." Supplemental Volume of Exhibit, Volume 1 at 17. "[I]n this particular situation [the] wounds were not life-threatening, but I think they were probably produced by a sharp object with the intent to produce a wound." *Id.* at 18-19. Gerber testified that he suffered pain as a result of his injuries and photographs showed that he had a scar on his leg from the lacerations. He missed seven days of work following the attack.

[4] The State charged Wilburn with battery resulting in moderate bodily injury, a Level 6 felony, and battery by means of a deadly weapon (specifically, a knife), a Level 5 felony. A jury found him guilty of battery resulting in moderate injury but was unable to reach a verdict as to the second count.[2] At sentencing, the trial court noted Wilburn's criminal history and then stated,

> In this situation, you and your girlfriend had broken up. She was with someone else. That upset you. You came over and damaged his property and you cut him. You know, it seems to me at some point in time when you start cutting people with a knife that there has to be a line that's going to be drawn. So on –
>
> [Defense Counsel]: Judge, I think the jury didn't find him guilty of the knife –
>
> [Court]: The cut were [sic] on the legs, [counsel]. Come on. The facts are the facts. I looked at the evidence again[] last night.

---

[2] The trial court declared a mistrial on the battery by means of a deadly weapon charge and the State ultimately dismissed this count.

I don't know how you get that many stitches in your legs without being cut by a knife.

So, based upon the seven misdemeanor convictions and also one juvenile adjudication [on your criminal record], the overall sentence – judgment is entered as a Level 6 Felony. The overall sentence is 30 months.

Tr. at 189-90.

# Discussion and Decision

## I. Abuse of Sentencing Discretion

[5] Subject to the appellate courts' review and revise power, sentencing decisions are within the sound discretion of the trial court and are reviewed only for an abuse of that discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*.

[6] Our supreme court explained in *Anglemyer*:

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are

clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law.

*Id*. at 490-91.

[7] Wilburn contends that "[b]y stating its disagreement with the trial outcome as it related to its own view of the evidence, the trial court abused its discretion in sentencing Wilburn to [the maximum sentence]." Brief of Appellant at 12. Essentially, Wilburn contends the trial court relied on an improper reason for imposing his maximum sentence.

[8] In *Phelps v. State*, 24 N.E.3d 525 (Ind. Ct. App. 2015), the defendant was charged with Class A felony dealing in cocaine and Class C felony possession of cocaine. A jury found him guilty of possession but not dealing. At sentencing, the trial court stated, "I don't know why the jury didn't find you guilty of that offense. . . . [H]ad this been tried to the Court instead of to a jury . . . I would have clearly found you guilty of dealing. Because I think the evidence showed that." *Id.* at 527. The trial court then laid out a number of other aggravating circumstances and sentenced the defendant to a maximum sentence. On the defendant's appeal of his sentence, we held that the "trial court's blatant disagreement with the jury verdict" was an abuse of discretion even though the trial court identified other proper aggravating circumstances because of the "suspect" nature of the sentencing enhancement. *Id.* at 528-29. We reversed the maximum sentence of eight years and remanded for imposition of a six-year-sentence rather than the advisory sentence the defendant requested in recognition of the independent aggravating

circumstances. *Id.* at 529; *see Hammons v. State*, 493 N.E.2d 1250, 1253 (Ind. 1986) (remanding with instructions to re-sentence defendant to the presumptive term for voluntary manslaughter where, "[o]n three different occasions, the trial judge stated for the record that he disagreed with the jury verdict for voluntary manslaughter because there was sufficient evidence for a murder verdict": the judge did not "merely entertain[] mild skepticism of the jury verdict" but likely compensated for what it considered a wrong decision by the jury in imposing a maximum sentence); *Gambill v. State*, 436 N.E.2d 301, 305 (Ind. 1982) (remanding for re-sentencing and noting that "[i]t is clear that the trial court enhanced the sentence to compensate for what he believed to be an erroneous verdict"); *see also McCain v. State*, No. 19A-CR-1113 at *4-5 (Ind. Ct. App. Jan. 6, 2020) (reducing voluntary manslaughter sentence because of trial court's "outspoken disagreement" with the jury's verdict; jury found the existence of sudden heat but trial court stated, "I didn't see any sudden heat. It was the clearest case of, I'd say, cold-blooded murder I've seen[; t]he voluntary manslaughter verdict was a gift" and sentenced defendant to the minimum sentence available for murder).

[9] Wilburn likens the trial court's statement and actions in his case to that of the trial courts' statements in *Phelps*, *Hammons*, and *Gambill*. We disagree. Here, the trial court's sentencing statement focused on Wilburn's numerous prior convictions and the circumstances under which he came into contact with Gerber and unlike the statements in *Phelps*, *Hammons*, and *Gambill,* was not "openly hostile" to the jury's decision. *See Tiller v. State*, 541 N.E.2d 885, 893

(Ind. 1989) (characterizing the trial court's statement in *Gambill* as "openly hostile to the jury's verdict" whereas in *Tiller*, the trial court merely made a statement regarding the seriousness of the crime in explaining the sentence); *see also Wilson v. State*, 458 N.E.2d 654, 656 (Ind. 1984) (holding that although the trial court expressed a "degree of skepticism" regarding the evidence of sudden heat supporting a manslaughter verdict over a murder verdict, the trial court was not "so resolutely opposed to the jury verdict" as in *Gambill*).[3]  The trial court's reference to Wilburn cutting Gerber was an "evaluative statement of the circumstances surrounding the crime[.]"  *Wilson*, 458 N.E.2d at 656.  There was clear evidence—including from Wilburn himself—that Wilburn wielded a knife during the encounter and that because of the presence of the knife, Gerber suffered an injury that he otherwise would not have suffered, regardless of how the injury occurred.  That the trial court noted that Wilburn brought a knife to the fight does not rise to the level of the statements in *Phelps*, *Hammons*, or *Gambill* disparaging the jury's decision and does not render the enhanced sentence in this case "suspect."  "Generally, the nature and circumstances of a crime is a proper aggravating circumstance[,]" *Gomillia v. State*, 13 N.E.3d 846, 853 (Ind. 2014), as is a criminal history, Ind. Code § 35-38-1-7.1(a)(2).  Accordingly, we hold that the trial court did not abuse its discretion in sentencing Wilburn to the maximum term.

---

[3]  Moreover, the jury here did not acquit Wilburn of battery by means of a deadly weapon; it was unable to reach a verdict on that count.  The trial court's "skepticism" therefore did not invade the province of the jury to decide whether a defendant was guilty or not guilty.

# II. Inappropriate Sentence

[10] Wilburn also contends his sentence is inappropriate because neither the nature of his offense nor his character warrants the maximum penalty. Article 7, sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B). *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008). Rule 7(B) provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Sentencing decisions rest within the discretion of the trial court and, as such, should receive considerable deference. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[11] The defendant bears the burden of demonstrating his sentence is inappropriate under the standard, *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006), and we may look to any factors in the record for such a determination, *Reis v. State*, 88 N.E.3d 1099, 1102 (Ind. Ct. App. 2017). Ultimately, "whether we regard a sentence as [in]appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to

others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

[12] The advisory sentence is the starting point our legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. The sentencing range for a Level 6 felony is between six months and two and one-half years, with an advisory sentence of one year. Ind. Code § 35-50-2-7(b). Here, the trial court sentenced Wilburn to thirty months, the maximum sentence, for his battery conviction.

[13] The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation in it. *Washington v. State*, 940 N.E.2d 1220, 1222 (Ind. Ct. App. 2011), *trans. denied*. When evaluating a defendant's sentence that deviates from the advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that distinguishes it from the typical offense accounted for by our legislature when it set the advisory sentence. *Moyer v. State*, 83 N.E.3d 136, 142 (Ind. Ct. App. 2017), *trans. denied*.

[14] Wilburn believes the trial court "stated it best" when it said that "[e]verybody got kind of manipulated in this matter but you went beyond what you should have done." Tr. at 189. He characterizes his actions as "reacting because his on again, off again girlfriend had begun to date someone else." Br. of Appellant at 13. However, this was not an impulsive action caused when Wilburn unexpectedly encountered his ex-girlfriend with someone else. The

text messages introduced into evidence indicate that Wilburn knew Nicodemus was with someone else and, while making multiple threats against that person and his property, went to Nicodemus' house, damaged Gerber's vehicle, let himself into the house, and violently confronted Gerber. This was a deliberate and unnecessary action and nothing about the nature of Wilburn's offense warrants a reduction in his sentence.

[15]  The "character of the offender" portion of the Rule 7(B) standard permits a broader consideration of the defendant's character. *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013), *trans. denied*. "A defendant's life and conduct are illustrative of his or her character." *Morris v. State*, 114 N.E.3d 531, 539 (Ind. Ct. App. 2018), *trans. denied*. And the trial court's recognition or non-recognition of aggravators and mitigators serves as an initial guide in determining whether the sentence imposed was inappropriate. *Stephenson v. State*, 53 N.E.3d 557, 561 (Ind. Ct. App. 2016).

[16]  When considering the character-of-the-offender prong of our inquiry, one relevant consideration is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). "The significance of a criminal history . . . varies based on the gravity, nature, and number of prior offenses in relation to the current offense." *Id*. And this court has held that "[e]ven a minor criminal record reflects poorly on a defendant's character." *Reis*, 88 N.E.3d at 1105.

Wilburn notes that although he has a criminal history, it does not denote him as among the "worst of the worst" offenders. Br. of Appellant at 12. As the trial court pointed out, Wilburn has seven misdemeanor convictions and a juvenile adjudication. This is his first felony conviction. Nonetheless, two of his prior convictions were for battery, same as the present offense, and he had a pending battery charge at the time of sentencing. In addition, one of his convictions was for criminal recklessness and one for invasion of privacy. He was first arrested at the age of fifteen. Given the nature and number of prior offenses in relation to this offense and given that Wilburn's criminal history shows a consistent pattern of criminal offenses over the past fifteen years, Wilburn has not persuaded us that his character makes his thirty-month sentence inappropriate.

# Conclusion

The trial court did not abuse its discretion in sentencing Wilburn and after giving due consideration to the nature of his offense and his character, we conclude his thirty-month sentence is not inappropriate. The judgment of the trial court is affirmed.

Affirmed.

Bradford, C.J., and Altice, J., concur.