Douglas REAVES, Appellant,

v.

STATE of Indiana, Appellee.

No. 15S00–8806–CR–533.

Supreme Court of Indiana.

Feb. 17, 1992.

848

Susan K. Carpenter, Public Defender of Indiana and M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana and Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Felony Murder and Robbery, a Class A felony. He received consecutive sentences of sixty (60) years and forty (40) years, respectively.

The facts are: On August 27, 1986, appellant, Don Linneman and Daryl Fritts were drinking heavily in an Ohio tavern when appellant talked the other two into going in with him on a burglary in Indiana. Linneman, driving his pickup truck, dropped off the other two at the home of Edward Losekamp and then went to visit Toby Littleton at his home near Lawrenceburg, where he arrived extremely intoxicated around ten o'clock and stayed for about an hour.

Edward Losekamp was virtually confined to a hospital bed and was in bed that night when shortly before ten o'clock appellant, his face covered with a bandanna, kicked open the front storm door, confronted Ruth Losekamp, Edward's niece, and demanded money. Accompanied by Fritts, appellant began smashing furniture and Ruth went into her uncle's bedroom and obtained some money. Threatening Edward with a knife, appellant demanded more money and when Ruth replied there was no more, appellant threw her to the floor, fracturing her hip. Appellant picked her up from the floor and threw her onto her uncle's legs as he lay on his bed. Fritts covered her head with a pillow and proceeded to sexually molest her by fondling her breasts and genitals; appellant then forced her to fondle his. Appellant and Fritts smashed the rest of the furniture in the house, closed the door to the bedroom and blocked it with the stove and refrigerator, loaded their loot including guns, coins, and a gold pocket watch into Ruth's car, and made their getaway. Appellant, however, immediately lost control of the car and ran off the road. They abandoned the car and went on foot to Linneman's truck. He drove them back to the wrecked car to retrieve some of the stolen items.

The victims spent that night on Edward's bed, unable to move. The next morning, a county highway worker noticed their car off the road and went to their house to render assistance. The victims were transported to the hospital where Ruth was treated for bruises, abrasions, vaginal bleeding, and a fractured hip which required replacement. Edward was examined, treated and released the same day. He went to stay in the home of another niece, where he remained bedfast. His condition steadily deteriorated until he died three weeks after the robbery. An autopsy revealed portions of a blood clot in his leg had broken off and traveled to his pulmonary arteries. The embolism had blocked the flow of blood between his lungs and heart, straining the latter and causing his death. The Hamilton County, Ohio Coroner testified that having Ruth thrown onto his lower legs and remaining there had caused the clotting responsible for the pulmonary embolism, and accordingly, the cause of death was listed as a homicide.

The day Edward died, appellant approached his girlfriend and two of her friends, claiming he needed money to leave town because he had injured a man in a bar fight and was afraid he would die. His girlfriend obtained cash, and appellant used it to travel to Florida. One of her friends, fearing appellant had been involved in

some illegal activity, notified her uncle, a police officer, of appellant's story. In a statement given in Florida, appellant admitted the burglary and robbery but denied any sexual molestation. At trial, three witnesses testified that appellant had sold them guns, coins, and a pocket watch identified as similar to those stolen from the Losekamps. Daryl Fritts testified he and appellant had perpetrated the burglary and robbery.

■ Appellant contends the trial court committed fundamental error in violating the prohibition against double jeopardy by imposing sentence on both the felony murder and the robbery. The jury found appellant guilty of felony murder/robbery, felony murder/burglary, robbery, and burglary. The trial court merged the felony murder counts into one conviction for felony murder and entered sentences for felony murder and robbery, the sentences to run consecutively.

Noting the charging information included one count of robbery naming both Losekamps as victims, appellant argues it was double jeopardy to punish him twice for the same robbery by imposing separate sentences for that offense and the felony murder based upon that same offense. He correctly cites *Swafford v. State* (1986), Ind., 498 N.E.2d 1188 for the proposition that sentence may not be imposed upon both felony murder and its underlying felony. The State acknowledges this is the law, citing *Huffman v. State* (1989), Ind., 543 N.E.2d 360, *cert. denied*, — U.S. —, 110 S.Ct. 3257, 111 L.Ed.2d 767, *overruled on other grounds, Street v. State* (1991), Ind., 567 N.E.2d 102, but goes on to point out that in cases where an underlying offense, such as a bodily injury aggravator, was committed on two separate victims, either will suffice as the predicate for the greater while not merging with the other, which survives to stand alone (or to enhance another greater offense). *Hansford v. State* (1986), Ind., 490 N.E.2d 1083.

Here, the trial court was careful to specify its entry of judgment was for the Class A robbery of the victim Ruth Losekamp; the robbery of her uncle thus remained to

serve as the predicate for the felony murder/robbery conviction. In his reply brief, appellant cites *King v. State* (1988), Ind., 517 N.E.2d 383 for the proposition that injuries to multiple victims charged in one count do not comprise multiple offenses for double jeopardy purposes. However, in *King* we held the same injuries to two victims could not support murder and attempted murder convictions as well as the elevation of burglary and robbery charges to Class A felonies. This lends no support to appellant's position, and its result is distinguishable from the case at bar, where from similar facts the judgment has been pared down to one conviction for homicide and one for aggravated robbery.

■ Appellant contends the trial court erred in imposing both aggravated and consecutive sentences totalling 100 years and in ordering them served consecutive to insufficiently specified sentences on Ohio convictions. In its sentencing statement, the court noted appellant had been sentenced to a term of from 6 to 25 years on his guilty plea in Hamilton County, Ohio to charges of aggravated burglary of the home of a 92–year–old man on August 20, 1986, six days before the instant crime. The court noted as well that the mitigating factors were outweighed by the aggravating factors, which it discussed at some length, and then rendered aggravated consecutive sentences to be served consecutive to "the sentences which the defendant is presently serving in the State of Ohio."

Appellant argues the sentencing order, by merely making reference to the one sentence in Ohio, thus was overly vague as to the date service of the instant sentence was to commence, in violation of Ind.Code § 35–38–3–2(d), which states "[a] term of imprisonment begins on the date sentence is imposed, unless execution of the sentence is stayed according to law." The State concedes the order fails to specify which Ohio sentences are to be completed before service of the instant one, but goes on to argue appellant is in the best position to know his Ohio discharge date, and argues setting a specific date would be unrealistic, considering the potential for

changes in good time credit, *e.g.*, and that no authority exists requiring it.

In the case at bar, the record reveals the trial court was fully apprised by the probation officer who conducted the presentence investigation of the nature and circumstances of the Ohio burglary conviction and includes State's Exhibit No. 2, a copy of appellant's judgment of conviction for that offense, Case No. B863916, aggravated burglary, for which he was sentenced on January 27, 1987 to a term of from 6 to 25 years in the Ohio Reformatory. As appellant points out, courts may not withhold judgment nor indefinitely postpone sentencing, *Robison v. State* (1977), 172 Ind. App. 205, 359 N.E.2d 924, nor impose sentences which begin *in futuro, Holland v. State* (1976), 265 Ind. 216, 352 N.E.2d 752. Here, however, the sentencing order, in conjunction with the record of the sentencing hearing, leaves no doubt as to precisely what Ohio sentence must be completed before appellant is to commence serving his term in the instant case and makes clear the indeterminate nature of that sentence. Under the circumstances, the consecutive sentencing order was sufficiently specific to satisfy statutory and due process requirements.

■ Appellant argues his 100–year sentence is manifestly unreasonable. He cites his youthful age of nineteen at the time of the crime, his ingestion of controlled substances, the lack of any intent to kill, his childhood in a severely dysfunctional, alcoholic home, and his despondency over the death of his older brother as circumstances the trial court could have balanced in mitigation. He cites *Fointno v. State* (1986), Ind., 487 N.E.2d 140 wherein we held a series of enhanced consecutive sentences arising from one criminal episode resulted in a manifestly unreasonable term. There, noting that "[g]iven the degree of subjectivity that cannot be eliminated in the sentencing process, it would be inappropriate for us merely to substitute our opinions for those of the trial judge," we nevertheless went on to find that "considering the reduced significance of the confinement counts and the robbery offenses when compared" with the rape and criminal deviate conduct counts, "the addition of twenty-four additional years evidences a vindictiveness proscribed by Art. I § 18 of our State Constitution, *supra* and would not be found appropriate to the offenses and offender with which we are here concerned." *Id.* at 149.

Here, however, by contrast, no such "stacking" of ancillary offenses occurred; indeed, no counts of sex offenses, confinement, or theft, *e.g.*, while colorable, were even charged, and the burglary conviction was not sentenced; the only offenses to receive aggravated sentences thus were the primary counts of the felony murder of one victim and the robbery resulting in serious bodily injury to the other victim. *Fointno* thus is inapposite here. Moreover, the trial court emphasized the advanced age and helplessness of the victims here. This compared to the aggravated burglary of the 92–year–old man in Ohio. The court also noted the closeness in time of that episode to this one, the gratuitous nature of the injuries inflicted, and the lack of any attempts at rehabilitation by appellant, that appellant was in need of correctional treatment best provided by commitment to a penal facility, that the crime was heinous in nature, and that imposition of a reduced sentence would depreciate the seriousness of the crime. Only one valid aggravator is needed to sustain an enhanced sentence, *Shields v. State* (1988), Ind., 523 N.E.2d 411. The same reasons may serve to justify both enhanced and consecutive sentences. *Smith v. State* (1985), Ind., 474 N.E.2d 71. A reasonable person could find appellant's sentence appropriate to the offense and the offender; it thus is not manifestly unreasonable. Ind.Appellate Rule 17(B).

■ The State here urges us to remand for sentencing on the burglary conviction. As discussed in the preceding issue, however, it appears the trial court imposed judgment on a single count of felony murder/robbery *and* /burglary and allowed the underlying burglary offense to merge into that felony murder conviction to allow separate sentencing on the robbery count.

It thus was proper to impose no sentence on the burglary conviction. There was no error in sentencing appellant.

█ Appellant contends the trial court erred in allowing the Hamilton County, Ohio Coroner, Dr. Frank Cleveland, to testify that Edward Losekamp's death was homicide and in admitting the coroner's report in evidence. At trial, Dr. Cleveland testified, over appellant's objection, that Losekamp's historical background indicated that there should be a post-mortem examination.

The autopsy was performed by Dr. Ross Zumwalt, whose report indicated the cause of death to be pulmonary embolism resulting from phlebothrombosis, the formation of blood clots in peripheral veins in the victim's lower right leg. In a cover sheet appended to the autopsy report, admitted over appellant's objection, the witness propounded his coroner's finding that the victim's manner of death was homicide and gave testimony to that effect.

Appellant argues allowing the coroner to recite his opinion as to the manner of death was improper because it was based upon information from an unknown source outside the autopsy report, thus was hearsay admitted in violation of his confrontation rights; he moreover maintains it was not based upon facts observed so as properly to form the basis of an expert opinion, citing *McFarland v. State* (1978), 269 Ind. 385, 381 N.E.2d 85. He also argues allowing Dr. Cleveland to opine as to the manner of death invaded the province of the jury as a conclusion as to a question of ultimate fact, citing *McCollum v. State* (1980), 275 Ind. 1, 413 N.E.2d 912. Noting the witness failed to mention the decedent had been treated at the emergency room and then released by persons who noted no signs of bruising on his lower extremities, appellant in essence argues Dr. Cleveland's opinion as to the manner of death was not based upon pertinent medical facts drawn from his review of the autopsy report and thus was improperly admitted as expert evidence.

The facts that the robbery had occurred, however, and that Edward had been as-saulted and his niece had been thrown upon his lower legs, were not in dispute and were evident from other sources, including police witnesses and the niece herself; even assuming it constituted inadmissible hearsay, such information as elicited also from Dr. Cleveland thus was not prejudicial to appellant. *McCovens v. State* (1989), Ind., 539 N.E.2d 26. As to the propriety of Dr. Cleveland's opinion as to the manner of death, we note that in his case in chief, appellant introduced the videotaped deposition of the forensic pathologist who performed the autopsy, Dr. Ross Zumwalt. He had since moved to New Mexico, and prior to trial defense counsel and the prosecutor travelled there to take his testimony regarding the cause and manner of the victim's death.

Dr. Zumwalt opined that his findings, that blood clots originating in the victim's lower leg had moved to his lungs and caused his death, were consistent with having been initiated by the weight of his niece's body resting on his legs the night of the robbery some three weeks prior to death; he also opined they were consistent with having resulted from natural causes including the victim's arteriosclerosis and congestive heart failure. In his trial testimony, Dr. Cleveland also acknowledged the victim could have died from the same causes even in the absence of any trauma from the robbery. A defendant's reference to or use of an erroneously admitted line of evidence cures or waives any error. *United States v. Silvers* (7th Cir.1967), 374 F.2d 828. Here, appellant introduced the deposition of Dr. Zumwalt's testimony regarding the cause and manner of death and had the videotape played before the jury. He then called as a witness Dr. Gregory Heaton, a pathologist working at the Dearborn County Hospital, and elicited his expert opinion as to the cause of death based upon the autopsy report and slides. Even assuming for the sake of argument that Dr. Cleveland's testimony in that regard was improper, in light of appellant's introduction of the same line of testimony from his own witnesses, its admission here was not prejudicial nor reversible.

There was no reversible error in the admission of Dr. Cleveland's testimony.

■ Appellant contends there was insufficient evidence to show his actions caused the death of Edward Losekamp. He maintains the evidence failed to show the victim suffered any injury due to the robbery that caused the thrombosis that killed him. In support, he points out that Edward's niece was found with her legs hanging off the left side of the bed and thus her weight must have been on his left leg, not on his swollen right leg; that most of the medical personnel did not report any bruising on the victim's legs when he was examined and released the day after the crime; and that Dr. Zumwalt's external and internal examination of the swollen right leg revealed no sign of trauma, although he testified any signs could have dissipated during the intervening three weeks. Appellant also points out the testimony that Edward remained entirely bedfast during that period, that the corresponding reduction in circulation increased the chances of clotting, and that the stasis-dermatitis on his legs indicated he had suffered from bad circulation for an extended period of time.

Claiming that Edward's "conscious decision" to remain totally immobilized after the incident was an intervening cause, appellant argues that the cause of Edward's death was so extraordinary and attenuated from the events of the crime, that the death was in no way related to the result intended or hazarded by the robbers, and that it would be unfair to hold him responsible for Edward's death, citing *Ford v. State* (1988), Ind., 521 N.E.2d 1309. He concludes that the evidence is insufficient to establish causation, either mediate or immediate, between the events of the robbery and Edward's death, thus not all the elements of felony murder were proven beyond a reasonable doubt and his conviction on that charge should be reversed.

Upon sufficiency review, this Court looks only to the probative evidence and reasonable inferences supporting the verdict to see, without reweighing the evidence or judging witness credibility, whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Braswell v. State* (1990), Ind., 550 N.E.2d 1280. Thus while appellant underscores the testimony of Dr. Heaton that Edward died of natural causes, as well as the similar conclusion of Dr. Zumwalt, and although all three pathologists agreed the manner of death could have been either natural or due to the crime, under our standard the opinion of Dr. Cleveland, standing alone, is sufficient to support a finding of causation. We find appellant's remonstrance that all three doctors failed to consider Edward's niece had come to rest on his left leg to be without merit; the fact she was found with her feet off the left side does nothing to negate the probability that her upper body rested on the right side of the bed and thus upon Edward's right leg.

■ Even were Edward's death due to his immobilization following the robbery incident, under our prior cases it still would be chargeable to appellant. In *Thomas v. State* (1982), Ind., 436 N.E.2d 1109, the victim, who had a long history of heart disease, was merely handcuffed during the robbery, but immediately after the intruders left died of acute cardiac arrhythmia. The pathologist opined the primary cause of death was the stress of the ordeal, and in response to Thomas's contention that such causation was too attenuated, we stated: "Proof beyond a reasonable doubt does not require proof to a moral certainty.... The physical debility that caused [the victim's] death was reasonably found by the jury to have been produced by the defendant's acts in committing the robbery. Under the statute, he is guilty of murder." *Id.* at 1112.

A case even more on point is *Pittman v. State* (1988), Ind., 528 N.E.2d 67, where after suffering an abdominal stab wound, the victim underwent exploratory surgery to assess all the damage. He was recovering after the surgery but then died from a pulmonary embolism, which originated not at the wound site but in his legs. The treating physician opined that the victim, having suffered from poor circulation and stasis dermatitis prior to the crime, devel-

oped the embolism partly because of his obesity and partly because of his post-operative immobility, and would have survived absent the exploratory surgery. On appeal, this Court held, despite the intervening surgery, the defendant was responsible for the victim's death because he put in motion a series of events ending in the death and therefore had contributed mediately or immediately to it.

In the case at bar, it is clear that whether Edward died as a result of his niece being thrown on him or as a result of his bedfast debilitation following the crime, the robbery was the mediate or immediate cause of the clotting leading to his death. "It has never been a defense that the victim would not have died from the wounds inflicted on him had it not been for his weakened physical condition." *Id.* at 69–70. Given the victim's advanced age here and the evidence that appellant threw his niece upon him in bed, we cannot say the variation between the result hazarded and the result actually achieved was so extraordinary as to make it unfair to hold appellant responsible for the result. *Ford, supra.*

The evidence was sufficient to support appellant's conviction of felony murder.

■■■■■ Appellant contends the trial court erred in instructing the jury. Noting the testimony that appellant and his companions had ingested three fifths of whiskey and four cases of beer the night of the crime, he first argues his intoxication defense was undercut and the jury misled by the court's failure to give his Tendered Instructions Nos. 1 and 2 while giving the State's Instruction No. 9. We note at the outset that the manner of instructing the jury lies within the sound discretion of the trial court, whose ruling will not be reversed unless an instruction error is such that, taken as a whole, the charge to the jury misstates the law or otherwise misleads the jury. *Concepcion v. State* (1991), Ind., 567 N.E.2d 784. Where the subject matter of a tendered instruction is properly covered by other instructions given, refusal to give the tendered instruction is not error. *McCurry v. State* (1990), Ind., 558

N.E.2d 817; *see Tiller v. State* (1989), Ind., 541 N.E.2d 885.

■■■ The gist of appellant's argument here is that the State's instruction, which was given as modified and told the jury that it must find appellant not guilty if he was too intoxicated to form the specific intent to commit the crime, went too far in cautioning the jury as per *Terry v. State* (1984), Ind., 465 N.E.2d 1085 that as a general proposition a defendant is not unable to form the requisite intent as long as he, in essence, displays lucidity during commission of the crime, and did not go far enough in giving specific legal guidance as to how the jury was to use the intoxication evidence in assessing the presence of specific intent to commit the crimes charged.

We cannot agree, however, that the court's final instruction on intoxication left the jury with an improper perspective on that defense. The court's preceding instructions defined "knowingly" and "intentionally," and the one at issue stated, in pertinent part: "If you find the defendant was intoxicated to such an extent that you have a reasonable doubt as to whether he was capable of knowingly or intentionally committing the act charged, then you should find the defendant not guilty of the offenses of robbery and burglary." Appellant's tendered instructions differed only in their use of the wording "specific intent;" their import, that if, after considering appellant's state of intoxication, they "have a reasonable doubt whether" he formed "the specific intent to commit robbery and burglary" they must find him not guilty, is the same. He cites no authority for his proposition that the cautionary language given from *Terry, supra* is overstated and misleading. The trial court did not err in giving its intoxication instruction.

■■■ Appellant argues the court erred in telling the jury in its Instruction No. 6 that flight could be considered as evidence of guilt and in its Instruction No. 4 that appellant could be held responsible for the victim's death even if other factors contributed to its cause. At trial, however, appellant never objected to No. 6 and objected to No. 4 on only the general basis that it was

misleading; without more, this was insufficient to preserve error for review. *See Survance v. State* (1984), 465 N.E.2d 1076; *Russell v. State* (1979), 182 Ind.App. 386, 395 N.E.2d 791. Moreover, none of the cases cited in appellant's brief support his contention that the language to the effect that flight may be considered as evidence "of consciousness of guilt and guilt itself" amounts to error, much less fundamental error. Further, our examination of No. 4 reveals that it accurately states the law; appellant's echo of his previous argument, that other causes of death left him not legally responsible for Edward Losekamp's death, must similarly fail here. *See Pittman, supra.*

The trial court did not err in instructing the jury.

■ Appellant contends the trial court erred in failing to grant his motion for continuance made after codefendant Daryl Fritts agreed to plead guilty and turn State's evidence a few days before trial began. At that time, appellant moved for a week's continuance to prepare to meet the previously unexpected testimony of Fritts, whose counsel had been sharing work product with appellant's. When the trial court denied that motion, appellant filed a motion in limine requesting the court to exclude any statements or testimony of Fritts pertaining to appellant. The court took this motion under advisement until during trial, when appellant again raised the issue during the testimony of Deputy Sheriff Henry Schaefer. When Schaefer testified his investigation of Linneman and Fritts had led him to appellant, defense counsel objected. The prosecutor noted the witness had been directed to avoid any statements from codefendants, and the court, noting the witness had repeated none, overruled the objection.

Appellant maintains he was denied due process of law by being forced to defend against Deputy Schaefer's remarks connecting him to Fritts and Linneman and against Fritts' trial testimony, which alone placed him in the Losekamps' house actively engaged in the robbery, without adequate time to prepare. He cites *Butler v. State* (1978), 175 Ind.App. 409, 372 N.E.2d

190 for the proposition that the granting of a continuance is the appropriate remedy for inadequate time to obtain properly sought discovery, and *Leavell v. State* (1983), Ind., 455 N.E.2d 1110 for the proposition that with respect to codefendants who change their plea immediately before or during trial, the proper inquiry is whether, under all of the circumstances, the defendant was deprived of a fair trial by the prejudice allegedly arising from the change of plea.

As the State points out, however, to obtain a continuance based on want of preparation, because such continuances are not favored, good cause must be shown. *Baxter v. State* (1988), Ind., 522 N.E.2d 362. When such a continuance is denied, a prejudicial abuse of discretion must be demonstrated on appeal by a specific showing that additional time would have aided the defense. *Clark v. State* (1989), Ind., 539 N.E.2d 9. Here, appellant fails to identify how additional time would have helped his case, what evidence he could have sought or secured with the additional time, what new strategy he could have utilized, or how his original strategy was impaired by a lack of time to prepare. The prejudice occasioned by the deputy's mention of him in conjunction with his codefendants was *de minimus.* In short, appellant simply has failed to demonstrate the prejudice required of a showing of reversible error. *See Mengon v. State* (1987), Ind., 505 N.E.2d 788.

The trial court did not err in denying appellant's motions.

■ Appellant contends the trial court erred in admitting over his objection and motion to suppress the testimony of Detective Jerry Diersing concerning oral statements appellant made to him while in custody. On October 8, 1986, Detective Diersing and another officer from Ohio went to the Valusha County Jail in Daytona Beach, Florida to question him. Detective Diersing testified he informed appellant of his *Miranda* rights, appellant acknowledged them, then stated he only wanted to "set the record straight" about the events in Indiana but would not discuss any crimes

in Ohio and proceeded to state, "I didn't touch the old lady, Fritts did."

At the suppression hearing, appellant testified he was never advised of his rights, that he requested counsel which request was denied, that he felt he had no choice but to speak to the officers, and that at any rate he told them nothing. He now maintains admission of the detective's remarks concerning his statements violated his Fifth and Sixth Amendment rights, and noting the absence of any signed waiver form, contends the State failed to carry its burden of proving beyond a reasonable doubt his "confession" was voluntary, citing *Burton v. State* (1973), 260 Ind. 94, 292 N.E.2d 790. Appellant argues his remarks were elicited improperly after counsel had been requested, citing, *inter alia,* the case of *Sleek v. State* (1986), Ind., 499 N.E.2d 751.

The State argues the trial court's decision to believe the detective instead of the defendant in concluding the remarks were voluntary was a question of fact not to be reweighed by this Court on review. In reply, appellant argues the State has waived argument on this issue by failing to set forth pertinent authority. Nevertheless, in his original argument, appellant himself states the correct standard that in determining admissibility, the reviewing court will "consider only the evidence which supports the court's ruling and any unrefuted evidence in the defendant's favor," citing *Russell v. State* (1984), Ind. App., 460 N.E.2d 1252, 1254. Clearly, Detective Diersing's unequivocal testimony detailing the advisement of rights given appellant and describing his admissions made with no request for counsel was sufficient to support the trial court's ruling.

Denial of appellant's motion to suppress was not error .

Appellant contends the trial court erred in admitting hearsay testimony from Steve Schalk concerning silver coins he bought from appellant. When the witness was asked if appellant had said where he had obtained the coins, appellant made his hearsay objection which was overruled. Schalk went on to relate that subsequent to the sale, appellant advised him he had obtained them in the break-in of the Losekamp home. Appellant now maintains the court's ruling here put him in a position of having to surrender his Fifth Amendment right to not testify in order to examine the declarant of the hearsay, and that while numerous exceptions exist to the hearsay rule, the failure of the State to mention any in response to his objection left no foundational basis for admission of the testimony.

The appellant cites no authority for his proposition and we find none. The trial court's ruling was correct, for while until recently third-party hearsay admissions against penal interest were generally inadmissible, *see Thomas v. State* (1991), Ind., 580 N.E.2d 224, appellant's remark here clearly falls within the hearsay exception for prior admissions of a criminal defendant (*i.e.,* as a party-opponent), *Hughes v. State* (1989), Ind., 546 N.E.2d 1203; *Jethroe v. State* (1975), 262 Ind. 505, 319 N.E.2d 133. Moreover, it was proper for the trial court *sua sponte* to rule correctly on a question of admissibility, just as on review this Court will uphold a correct legal ruling even where based on incorrect, or absent, legal reasoning below. *Hyde v. State* (1983), Ind., 451 N.E.2d 648; *Cain v. State* (1973), 261 Ind. 41, 300 N.E.2d 89.

The admission of Schalk's testimony regarding appellant's remarks was not error.

Appellant contends the trial court erred in allowing the State to ask leading questions during the testimony of its first witness, the victim Ruth Losekamp, and in allowing responses consisting of hearsay. In bringing out the events of the robbery, she was asked, "Were you thrown with some great force?", and after the court overruled appellant's objection, she continued her narration of events. Her relation of remarks heard during the course of the robbery was held admissible over appellant's hearsay objection as coming under the *res gestae* exception, but when she went into remarks made by her rescuers, they were excluded as being too remote in time from the *res gestae.*

Appellant acknowledges he must show he suffered substantial injury to demonstrate reversible error, citing *Hedges v. State* (1982), Ind., 443 N.E.2d 62, and not-

ing the specific testimony which yielded the objections was not inherently prejudicial, he nonetheless maintains the victim's testimony included allusions to improper hearsay which combined with leading questions to cause her testimony to "be more compelling and credible than it should have been." He accordingly reasons he was harmed because the jury was led to believe the State's version of, for example, the number of robbers in the house.

Appellant's assertion, however, that the alleged "harm transcended the content of the individual questions" at issue, has been resolved against him in previous cases. Trial irregularities which standing alone do not amount to error do not gain the stature of reversible error when taken together. *Stonebraker v. State* (1987), Ind., 505 N.E.2d 55. We find no error here.

■ Appellant contends the trial court erred in admitting over his objection the testimony of Indiana State Trooper Lyman Conley that he was asked by a female life squad attendant "if I had been told that Ms. Losekamp had been sexually abused." Because the unidentified attendant never testified at trial, appellant argues the remark as related by Trooper Conley was hearsay and prejudiced him because it was a characterization of Ruth's injuries.

As the State points out, however, the attendant's remark was a question, not an assertion of truth, thus was not hearsay. "Testimony of a police officer which merely relates to an investigation of alleged crimes and establishes only that information was received within the officer's own knowledge is not objectionable hearsay." *Sharp v. State* (1989), Ind., 534 N.E.2d 708, 713, *cert. denied* (1990), 494 U.S. 1031, 110 S.Ct. 1481, 108 L.Ed.2d 617. Moreover, there was sex offense testimony from other witnesses—medical personnel, a codefendant and the victim herself—so that admission of the remark in question was cumulative and its prejudicial effect *de minimis* at most. *Hicks v. State* (1989), Ind., 536 N.E.2d 496; *Hedges, supra.* Admission of the attendant's remark to Trooper Conley was not error.

■ Appellant contends the trial court erred in admitting over his objection the testimony of Toby Littleton, who testified that in the spring of 1986 he went on a rock hunting trip to a creek located on the Losekamp property and at the residence spoke to an elderly man. When he testified he was accompanied by appellant, defense counsel objected that the testimony was too remote in time to be relevant to the events in question. When the State responded it was being offered to show appellant's knowledge of the Losekamp household, the trial court overruled the objection. Appellant now maintains that because no evidence was introduced to show he was made aware of the victims' condition or advanced age, the testimony was irrelevant yet highly prejudicial because it implied he somehow had gained such information.

As appellant acknowledges, however, evidence tending to prove a material fact is admissible, even though that tendency is exceedingly slight; the trial court has wide discretion in ruling on the relevance of evidence. *Goodloe v. State* (1982), Ind., 442 N.E.2d 346. Here, where the witness was subject to cross-examination, we fail to see how any connection drawn between appellant and the Losekamp residence would result in any undue, *i.e.*, irrelevant, prejudice. We find appellant's argument here to be without merit.

■ Appellant contends the trial court erred in admitting over his objection certain items of physical evidence without a foundation showing connection to the crime and a proper chain of custody. State's Exhibits 42 and 43 were two gold coins identified by codefendant Daryl Fritts as having been taken from the Losekamp residence and recovered by police from coin buyer Thomas Schalk. Citing *Hooper v. State* (1983), Ind., 443 N.E.2d 822 for the proposition that to be admissible, physical evidence must be shown to be connected with the accused and the crime, appellant argues Fritts admitted he never had the coins in his possession and thus could not connect them to the robbery. The record shows, however, that Schalk's testimony

reveals appellant eventually told him the coins had come from the robbery; this was sufficient to connect the gold coins recovered from Schalk both to the robbery and to appellant.

In the same vein appellant argues State's Exhibits 46, 49 and 51, which were a .22 caliber rifle stock, the rest of the rifle, and a shotgun, respectively, were admitted erroneously due to insufficient connection to the robbery. However, David Carr, a tenant farmer of the Losekamp property, testified he recognized the firearms as ones owned by Edward Losekamp. Appellant's argument that they were not identified with enough particularity to distinguish them from the others produced by the same manufacturer must fail, as must his contention they were inadmissible due to lack of a showing of chain of custody. The less susceptible an exhibit is to fungibility, alteration or tampering, the less strictly is the chain of custody rule applied. *Wray v. State* (1989), Ind., 547 N.E.2d 1062.

An exhibit is admissible once it is shown it is relevant and material, it is properly identified, and it is in substantially the same condition as at the time of the crime. *Fletcher v. State* (1970), 253 Ind. 468, 255 N.E.2d 217. Such is the situation in the case at bar. We see no error in the admission of the State's exhibits.

Appellant contends the trial court erred in admitting over his objection State's Exhibits 18 through 40 and 60, still photographs and a videotape of the interior of the Losekamp residence after the commission of the crime. These exhibits depicted the vandalism done to the home, and because they served to prove no element of any of the charged offenses, appellant maintains that, especially considering the cumulative effect of 23 exhibits, their probative value was outweighed by their prejudicial effect, thus their admission was error, citing *Bates v. State* (1977), 267 Ind. 8, 366 N.E.2d 659.

A trial court has wide discretion in the admission of photographs and will be reversed only upon a showing of abuse resulting in prejudice. *Buck v. State* (1983),

Ind., 453 N.E.2d 993. The exhibits in question here were not gruesome or inflammatory, and the vandalism they depicted, while not charged as such, was still part of the *res gestae* of the crimes. As we have stated previously, "perpetrators of such acts are not entitled to have their deeds completely sanitized when evidence is submitted to a jury." *Shelton v. State* (1986), Ind., 490 N.E.2d 738, 743. Any prejudice resulting here from the mere repetition of the photographs was minuscule and not such as to merit reversal.

The trial court did not err in admitting the photographs and videotape.

Appellant contends the trial court erred in refusing to grant his challenge for cause to Juror Arnold, who after testifying some of her uncles had been police officers, stated she would give more credibility to police officers than to other witnesses. Prior to deliberations, Ms. Arnold was replaced by an alternate juror due to a death in her family. Appellant maintains the court's failure to strike her for cause nevertheless was error because it implied to the other jurors tacit approval of granting police officers more credibility than other witnesses.

Ruling on a challenge for cause is within the trial court's discretion, which will not be reversed absent a showing of abuse. *Woolston v. State* (1983), Ind., 453 N.E.2d 965. The record in the instant case reveals that in response to defense counsel's final question regarding her pro-police attitude, Ms. Arnold responded, "I believe I could sit and listen to everybody and decide on my own." When defense counsel made his challenge for cause, the court responded he could conduct additional *voir dire* on Ms. Arnold. Counsel declined, remarking there was no use in belaboring it. The court then questioned Ms. Arnold on its own, eliciting that she would be able to "keep an open mind and listen to all the evidence from both sides." In view of these affirmances from the juror, we find nothing prejudicial in putting her on the jury, no danger of tainting by implication the remainder of the jurors, and no abuse what-

soever of the trial court's discretion. Denial of appellant's challenge for cause was not error.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and KRAHULIK, JJ., concur.

DICKSON, J., concurs in result without separate opinion.