**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MATTHEW J. McGOVERN**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANN L. GOODWIN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Feb 14 2012, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT M. NOLAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 22A01-1007-CR-433 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE FLOYD SUPERIOR COURT
The Honorable Maria D. Granger, Judge
Cause No. 22D03-0907-FB-1637

**February 14, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Defendant, Robert Nolan (Nolan), appeals his convictions for Count I, child molesting, a Class C felony, Ind. Code § 35-42-4-3(b); Counts II and III, child seduction, Class D felonies, I.C. § 35-42-4-7(h); and Count IV, rape, a Class B felony, I.C. § 35-42-4-1(a)(1).

We affirm.

## ISSUES

Nolan raises four (4) issues on appeal, which we restate as follows:

(1) Whether the trial court's admission of certain evidence constituted fundamental error;

(2) Whether the testimony of witnesses corroborating the victim's testimony constituted fundamental error;

(3) Whether the trial court abused its discretion in admitting evidence of Nolan's prior bad acts; and

(4) Whether the trial court properly sentenced Nolan.

## FACTS AND PROCEDURAL HISTORY

Nolan and Shannon Nolan (Mother) were married in 2001. Mother had three minor daughters from a prior marriage, K.F.D., M.D., and K.D. Nolan and Mother had a biological daughter, M.C.D. The family lived in Ohio until the end of 2004 and then moved to Floyd County, Indiana.

2

Nolan was a chiropractor and Mother was a nurse. The children were often in Nolan's care while Mother worked. Mother had no reservations about leaving her children with Nolan. Nolan took K.D. on fishing trips alone, and K.D. periodically worked at Nolan's office.

In 2005, M.D. moved out of the bedroom she shared with K.F.D., who was thirteen years old at the time. Nolan began fondling K.F.D.'s body, touching her breasts and genitals, and kissing her. Nolan complimented K.F.D.'s body, told K.F.D. that he loved her, and said that he wished he could have married her instead of Mother.

Nolan told K.F.D. about oral sex and taught her how to perform oral sex. On January 1, 2008, Nolan took K.F.D. to her room and the two performed oral sex on each other. On February 14, 2008, Nolan asked K.F.D. to perform oral sex on him while in K.F.D.'s bedroom and ejaculated in her mouth. The degree of sexual activity escalated as Nolan told K.F.D. that he wanted to have intercourse with her as well. Sometime between November 2008 to March 2009, Nolan and K.F.D. were in her bedroom. K.F.D.'s pants were off and Nolan began grabbing her knees. K.F.D. refused but Nolan insisted that he wanted to have intercourse. Nolan managed to slightly penetrate K.F.D.'s vagina. K.F.D. told Nolan that it hurt and Nolan expressed surprise.

K.F.D. was confused about her feelings toward Nolan. Although she believed that Nolan loved her as a girlfriend, K.F.D. considered him to be her stepfather. K.F.D. wrote a letter to Nolan beginning with, "[g]ood morning my love. I wanted to let you know that I love you with all my heart." (Appellant's App. p. 518(b)). The letter ended with

3

K.F.D.'s good wishes for an upcoming fishing trip. K.F.D. also gave a birthday card to Nolan in 2007 stating that "I love you with all my heart." (Appellant's App. p. 518(c)). Prior to May 2009, K.F.D. wrote a letter to Nolan describing her feelings toward him. In the letter, K.F.D. stated that "[w]hat has happened should have never happened and it needs to stop. I think I am just as guilty as you. Even when I knew it was wrong and it hurt, I still let it go […]. I know that this is wrong and that's why you wanted it kept a secret." (Appellant's App. pp. 518(d)-(e)).

On May 20, 2009, Mother filed a petition for legal separation against Nolan. Later that evening, Mother was alone with K.F.D. and M.D. Mother asked them what they thought. K.F.D. revealed her sexual activities with Nolan. Mother listened until Nolan returned, then sent K.F.D. to her room. After greeting Nolan, Mother returned to K.F.D.'s room and listened to further details. K.F.D. indicated that she was reluctant to come forward for fear of breaking up the family. Mother locked K.F.D. in her room and confronted Nolan who denied the allegations. That same day Mother called the police. Officer Jason Kerber of the Floyd County Police Department (Officer Kerber) responded and Mother informed him that Nolan had molested K.F.D. since she was a child. K.F.D. told Officer Kerber that she felt guilt and had not revealed the allegations in order to preserve the family. Detective Jeff Firkins of the Floyd County Police Department (Detective Firkins) interviewed Nolan at the police station. Again, Nolan denied the allegations. A forensic interviewer met with K.F.D., K.D., and M.D. K.F.D. repeated

4

her allegations against Nolan. Although K.D. did not make allegations against Nolan, M.D. alleged that Nolan had fondled her.

On July 8, 2009, the State filed an Information charging Nolan with the following: Count I, child molesting, a Class C felony, I.C. § 35-42-4-3(b); Counts II and III, child seduction, Class D felonies, I.C. § 35-42-4-7(h)[1]; and Count IV, rape, a Class B felony, I.C. § 35-42-4-1(a)(1). Count I, child molesting; Counts II and III, child seduction; and Count IV, rape. Prior to trial, Nolan filed a motion in limine under Ind. Evid. Rule 404(b) to prohibit any reference to allegations that he fondled M.D. The trial court granted the motion in limine subject to an offer of proof at a subsequent hearing or during trial. The State did not make an offer of proof and the matter proceeded to trial.

On June 28, 2010, a jury trial was held. The jury found Nolan guilty as charged on all Counts. On August 6, 2010, the trial court sentenced Nolan to eight years with two years suspended on Count I; three years with one year suspended each on Counts II and III; and sixteen years with four years suspended on Count IV. The trial court ordered all sentences to run consecutively.

Nolan now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Admission of Evidence*

---

[1] The State's Information, amended during trial, charged Nolan with child seduction under I.C. § 35-42-4-7(h)(A). We cite to the section only herein. We note that the statute was amended in 2009, with the relevant section renumbered as I.C. §35-42-4-7(k). *See* P.L. 125-2009, Sec. 7, effective July 1, 2009.

5

Nolan disputes the admission of certain evidence: (1) a letter from K.F.D. read aloud during her testimony and (2) Mother's testimony concerning Nolan's sexual fantasy involving her. Nolan contends on appeal that this admission constitutes reversible error. We review the trial court's admission of evidence for an abuse of discretion. *Butler v. State*, 951 N.E.2d 641, 645 (Ind. Ct. App. 2011). The trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it. *Id*.

Nolan acknowledges that his counsel failed to object to the admission of both items of evidence. Failure to object to evidence at trial results in waiver of issue for appellate review unless admission of said evidence constitutes fundamental error. *Southward v. State*, 957 N.E.2d 975, 978 (Ind. Ct. App. 2011). The fundamental error doctrine is exceedingly narrow. *Id*. "Fundamental error is an error that makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Clark v. State*, 915 N.E.2d 126, 130 (Ind. 2009). "An appellate court receiving contentions of fundamental error need only expound upon those it thinks warrant relief. It is otherwise adequate to note that the claim has not been preserved." *Id*. at 131-32.

## A. *Victim's Letter*

At trial, the State introduced an undelivered letter written by K.F.D. to Nolan containing her pleas for Nolan to be a real father to her. Without any objection from Nolan, K.F.D. read the letter aloud during her testimony. She testified that she wrote the

6

letter months prior to Nolan's arrest but did not deliver the letter to Nolan out of fear. Nolan now argues that the letter was irrelevant since it lacked descriptions of the specific incidents with which he was charged and was unfairly prejudicial as it "did nothing more than create sympathy for the victim." (Appellant's Br. p. 14). Nolan argues that the letter should not have been admitted because it violated Evid. R. 403, which prohibits the introduction of probative evidence if "substantially outweighed by the danger or unfair prejudice." The State contends that the letter corroborates K.F.D.'s testimony and was cumulative of K.F.D.'s testimony describing her feelings toward Nolan.

We note that Evid. R. 401 deems relevant evidence as that which has any tendency "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, the letter is relevant since its admission makes more or less likely that Nolan engaged in a sexual relationship with his step-daughter. Further, since Nolan's theory of the case was that Mother had persuaded K.F.D. to fabricate allegations against Nolan, the letter was relevant to refute such theory. We therefore find that the letter had probative value on whether Nolan committed the crimes against K.F.D. and on her credibility.

Although K.F.D.'s reading of the letter aloud at trial was an emotionally charged event, we cannot say that its probative value was substantially outweighed by the danger of unfair prejudice. *See* Evid. R. 403. "Unfair prejudice looks to the capacity of the evidence to persuade by illegitimate means, or the tendency of the evidence to suggest decision on an improper basis." *Camm v. State*, 908 N.E.2d 215, 224 (Ind. 2009). Here,

Nolan assumes that any sympathy evoked by the letter must have improperly swayed the jury to find him guilty. Nolan ignores handwritten correspondence from K.F.D. to Nolan, including another letter read aloud by K.F.D. at trial:

> Good morning, my love. I wanted to let you know that I love you with all of my heart. I will never love you any less. Please have a safe day. I hope you don't feel too tired.

(Transcript p. 308). When viewed alongside other evidence, including K.F.D.'s graphic testimony of her molestation and rape, we are not persuaded that K.F.D.'s reading of the undelivered letter alone was sufficient to improperly persuade the jury to determine Nolan's guilt.

Finally, even if the letter was improperly admitted, any such error would have been harmless. Prior to reading the letter aloud, K.F.D. testified without objection about her relationship with Nolan and her confused feelings toward him. Thus, to the extent that the letter represents cumulative evidence, the admission of such evidence is harmless error. *Purvis v. State*, 829 N.E.2d 572, 585, *trans. denied*, *cert. denied*, 547 U.S. 1026 (2006). Because the letter's probative value was not outweighed by a substantial likelihood of unfair prejudice, and because harmless error resulted even if improperly admitted, Nolan has not shown that admission of the letter made a fair trial impossible. We conclude that no fundamental error occurred.

### B. *Sexual Fantasy Testimony*

Next, Nolan contends that the trial court's admission of testimony pertaining to his sexual fantasy involving Mother was erroneous because it lacked relevance to the crimes

charged, constituted prior misconduct evidence, and was unfairly prejudicial. The State contends that the evidence was admissible because Nolan's counsel stipulated to it or opened the door to its admission. Just as with the admission of the victim's letter, Nolan's counsel did not object to the admission of this evidence and must therefore show fundamental error.

Nolan's theory of the case was that Mother sought a divorce from Nolan and persuaded K.F.D. to fabricate allegations against Nolan. During opening argument, Nolan's counsel questioned Mother's credibility by alluding to evidence that Mother had joined a website for married people to cheat on their spouses. The State objected and a bench conference ensued. The State later introduced evidence of Nolan's sexual request for Mother to have sex with a homeless person.

The State argues that Nolan's counsel stipulated to the admission of evidence pertaining to his sexual fantasy during the bench conference held during Nolan's opening argument. However, the record contains a number of inaudible portions and we are unable to conclude that Nolan's counsel stipulated to the admission of this evidence. Also, we are unable to find support for the State's contention that Nolan's counsel somehow opened the door by attacking Mother's credibility. The State's argument amounts to an accusation that Nolan first improperly introduced the issue of Mother's infidelity which in turn justified the introduction of evidence regarding Nolan's sexual dysfunctions.

9

We need not determine whether this evidence was erroneously admitted. Even if the evidence was erroneously admitted, the resulting error is harmless. Errors in the admission of evidence are deemed harmless unless they affect the defendant's substantial rights. Ind. Trial Rule 61; *Fleener v. State*, 656 N.E.2d 1140, 1141 (Ind. 1995). An error will be deemed harmless "if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." *Fleener*, 656 N.E.2d at 1142 (Ind. 1995). Here, the evidence of Nolan's conduct with K.F.D. was substantial. The evidence was unrelated to the charges against Nolan since his sexual fantasy here did not involve a child, nor related to his molestation or rape of K.F.D. Finally, the State's reference to such evidence during its closing argument was brief. We therefore conclude that admission of this evidence did not likely have a prejudicial impact on the jury and was thus harmless. Accordingly, we cannot say that the trial court's admission of such evidence constitutes fundamental error.

## II. *Witness Corroboration*

Nolan next contends that trial court erred by allowing the State to present testimony of several witnesses who repeated K.F.D's accusations. Nolan argues that this evidence constituted a "drumbeat repetition" of impermissible evidence under Evid. Rule 403 and the supreme court's opinion in *Modesitt v. State*, 578 N.E.2d 649 (Ind. 1991). (Appellant's Br. p. 23). Because Nolan failed to object at trial, he has waived appellate review of this issue unless admission of this testimony constituted fundamental error. *Southward*, 957 N.E.2d at 977.

In *Modesitt*, the supreme court sought to curb abuses resulting from admission of a victim's prior statement by a drumbeat repetition of the same statement through other witnesses. *Modesitt*, 579 N.E.2d at 653. Adopting Federal Rule of Civil Procedure 801(d)(1) to govern the use of the victim's prior consistent and inconsistent statements at trial, the supreme court reversed Modesitt's child molesting and criminal deviate conduct convictions because the "drumbeat repetition of the victim's original story" by three witnesses unfairly bolstered the victim's credibility and precluded meaningful cross-examination.[2] *Id.* at 652-53.

Nolan analogizes *Modesitt* to the facts of this case by pointing to the repetition of the victim's accusations through the testimony of Mother, a child forensic interviewer, and two police officers. Nolan argues that each bolstered and vouched for K.F.D.'s veracity prior to her own testimony. The State attempts to distinguish *Modesitt* on the basis that the quality of the witnesses' testimony differed from K.F.D.'s testimony since each witness only summarized her accusations.

We note that erroneous admission of evidence in violation of *Modesitt* has been found harmless where the victim's prior consistent statements were cumulative and witness testimony concerning the statements was "brief and consistent with" the victim's later testimony. *McGrew v. State*, 673 N.E.2d 787, 796 (Ind. Ct. App. 1996), *aff'd in part, rev'd in part*, 682 N.E.2d 1289, 1292 (Ind. 1997). Here, the record indicates that

---

[2] The supreme court's holding in *Modesitt* has been codified as Ind. Rule of Evidence 801(d). *See Brown v. State*, 671 N.E.2d 401, 406 n.4 (Ind. 1996).

K.F.D.'s testimony contained specific details about the progression of sexual acts committed by Nolan, starting with fondling and culminating in rape. The challenged testimony of the four witnesses merely provided a brief summary of K.F.D.'s accusations, rendering such evidence cumulative. *See McGrew*, 673 N.E.2d at 796. Also, the witnesses' descriptions only constituted a minimal portion of their testimony, and were also consistent with K.F.D.'s later testimony. *See id.* Accordingly, we find that admission of these witnesses' testimony did not deprive Nolan of a fair trial and therefore did not constitute fundamental error.[3]

### III. *Prior Bad Act Evidence*

Next, Nolan contends that the trial court abused its discretion by admitting testimony concerning his alleged fondling of K.F.D.'s sister, M.D. Nolan argues that such evidence constituted impermissible prior misconduct evidence under Evid.R. 404(b). Nolan objected to the admission of this evidence, yet the parties dispute whether Nolan's counsel actually sought an admonishment or moved for a mistrial.

On cross-examination, Nolan's counsel asked a forensic interviewer, who interviewed K.F.D. and her siblings following Nolan's arrest, about her interview with K.F.D.'s sister K.D.:

> [NOLAN'S COUNSEL]: You uh, you interviewed [K.D.]?
> [WITNESS]: Yes, I did.

---

[3] Nolan also asserts that the witnesses' testimony collectively and improperly vouched for K.F.D.'s credibility, citing to *Lainhart v. State*, 916 N.E.2d 924 (Ind. Ct. App. 2009). However, *Lainhart* involved a prosecutor's improper vouching for a police officer's credibility during voir dire. *Id.* at 937-938. We find the analogy inapplicable to the circumstances before us.

[NOLAN'S COUNSEL]: And you asked the question, why are you here?

[WITNESS]: Yes.

[NOLAN'S COUNSEL]: For protection from the media, and from [K.D.'s biological father] in Ohio. Did she tell you about her [biological father in Ohio]?

[WITNESS]: Did she tell me about him? I believe she did.

[NOLAN'S COUNSEL]: Alright. And did you know that [K.D.'s biological father] was, uh, basically the first husband of [Mother], uh, in Ohio. Did you know that?

[WITNESS]: Yes, I did.

[NOLAN'S COUNSEL]: And did you know that uh, a protective order had to be uh, uh, obtained from the, the county in Ohio, where they, they lived at the time, because of reported abuse by [K.D.'s biological father]?

[WITNESS]: I don't know if I necessarily knew about the protective order.

[NOLAN'S COUNSEL]: OK.

[WITNESS]: but I knew it was a nasty divorce, yes.

[NOLAN'S COUNSEL]: Fair enough. Uh, did, did [K.D.], uh, make any allegations, uh, with regard to [Nolan]?

[WITNESS]: [K.D.]? No.

[…]

[NOLAN'S COUNSEL]: Uh, [K.D.], um, mentioned to you, that she needed to be protected from her [biological father] in Ohio. But she never mentioned to you, at any time during her interview, that she needed protection from [Nolan], isn't that true?

[WITNESS]: That's true.

(Tr. pp. 257-59). On redirect, the State asked the forensic interviewer about her interviews with K.F.D.'s other siblings, specifically M.D.:

[STATE]: Did, um, [Nolan's counsel ask] you if [K.D.] said she was ever, anything was done to her? And I believe you said no.

[WITNESS]: Not to [K.D.], no.

[STATE]: Did uh, [M.D.], tell you anything?

[WITNESS]: Yes, she did.

[WITNESS]: And what did she say?

(Tr. p. 263). Nolan's counsel objected and a series of bench conferences commenced. At the first bench conference, Nolan's counsel objected on relevancy grounds, but the State argued that Nolan's counsel's questions regarding K.D.'s absence of allegations against

13

Nolan opened the door to whether other children had made allegations. Nolan's counsel agreed to permit the State to ask an additional question, but threatened to seek a mistrial if the questioning went further. The witness then recounted that although it was not considered an instance of "sexual contact," M.D. had indicated that on one occasion Nolan had tried to place his hands up M.D.'s shirt. (Tr. p. 264). Nolan's counsel objected again but after receiving assurance from the State that the witness would only testify to what M.D. had told her, the trial court allowed the questioning to continue. The witness went on to testify that Nolan had massaged her and that M.D. had run away once Nolan reached her bra line. A third bench conference ensued and although the record is incomplete, the trial court appears to have indicated that although it could sustain Nolan's objection and issue an admonishment, it would wait to make a ruling. Testimony then concluded and a final bench conference ensued, but does not appear in the record.

On appeal, Nolan maintains that he requested an admonition and a mistrial at some point during the foregoing bench conferences. Pursuant to Ind. Appellate Rule 31, the parties and the trial court submitted verified statements of the evidence relaying their versions of the bench conferences. Although both the State and the trial court maintain that Nolan's counsel did not request an admonition or seek a mistrial, Nolan's counsel maintains that he did. However, the trial court did not issue a ruling. Based on the record before us, which contains a significant amount of indiscernible or inaudible responses and also lacks transcription of the final bench conference or a verified

14

statement of the evidence on what was said therein, we are unable to determine the trial court's disposition of the issue.

Nevertheless, we need not determine this issue because we find that Nolan's counsel's questioning opened the door for the State to ascertain whether K.F.D.'s siblings had reported allegations against Nolan. Nolan argues that his cross-examination of the forensic interviewer did not open the door to questions because his questions regarding K.D. were intended to "establish that [Mother] underwent an acrimonious divorce in her prior marriage and that K.D. assumed that this fact was the reason the family was at the forensic interview." (Appellant's Br. p. 33). The State argues that Nolan's counsel's questioning of the witness left the jury with a false impression that no other child reported abuse against Nolan, an impression which was accentuated by earlier testimony from a police officer to the same effect. Further, the State contends that the evidence showed that Nolan "sexually abused according to a plan," commencing with massages and culminating in far-reaching sexual conduct. (Appellee's Br. p. 25). The State maintains that this evidence was admissible to rebut Nolan's defense, which went well beyond a simple denial of K.F.D.'s allegations and developed into a theory that Mother persuaded K.F.D. to fabricate the allegations against Nolan to support the result of divorce proceedings.

Evid. R. 404(b) forbids "[e]vidence of other crimes, wrongs, or acts […] to prove the character of a person in order to show action in conformity therewith." However, "[o]therwise inadmissible evidence may be admitted where the defendant opens the door

15

to questioning on that evidence." *Clark*, 915 N.E.2d at 130. "The door may be opened when the trier of fact has been left with a false or misleading impression of the facts." *Id*.

We agree with the State that Nolan opened the door to testimony regarding M.D.'s allegations. Earlier in the trial, Nolan's counsel directly elicited from Detective Firkins that no other child had reported allegations, and later impliedly elicited the same by asking the witness whether K.D. made allegations. The combined effect of such testimony left the jury with the misleading impression that no other child had reported any conduct against Nolan. Accordingly, we find no error in the admission of this evidence.[4]

## IV. *Sentencing*

Having addressed Nolan's issues regarding his trial, we now turn to his contentions regarding sentencing. Nolan argues that neither the nature of his offenses nor his character warrant enhanced and consecutive sentences. Our review of sentences falling within the statutory range is for an abuse of the trial court's discretion. *Southward*, 957 N.E.2d at 979. Under App. R. 7(B), we may review the appropriateness of a sentence authorized by statute. *Id*. Following due consideration of the trial court's decision, App. R. 7(B) permits our revision of a sentence for inappropriateness in light of

---

[4] Nolan also argues that the cumulative effect of the errors alleged constituted fundamental error. However, as no reversible error has been found with any of the previously addressed issues, Nolan cannot show cumulative error constituting fundamental error. *See Reaves v. State*, 586 N.E.2d 847, 858 (Ind. 1992).

16

the nature of the offenses and the character of the offender. *Id.* It remains, however, the defendant's burden to persuade us of the inappropriateness of the sentence. *Id.*

To review the nature of the offenses, we consider the advisory sentence for each crime as the starting point to determine appropriateness. *Id.* Nolan has been convicted of a Class B felony, which carries a range of six to twenty years and an advisory sentence of ten years; one Class C felony, with ranges of two to eight years and an advisory sentence of four years; and two Class D felonies, with a range of six months to three years, and an advisory sentence of one and a half years each. I.C. § 35-50-2-5, -7. Nolan received an aggregate executed sentence of twenty-two years and an aggregate suspended sentence of eight years, resulting in a total sentence of thirty years. Although Nolan's sentence is more than if the aggregate advisory sentences were imposed for each crime, we find no reason to disturb the trial court's judgment.

Nolan argues that the lack of brutality or violence "not already inherent in the nature of the crimes" renders his enhanced and consecutive sentences inappropriate. (Appellant's Br. p. 38). Nolan also points out that enhanced and consecutive sentences were not issued in other cases where one victim was involved, yet several acts of molestation occurred. We find these arguments inapplicable here. In addition to child molestation and rape, Nolan was convicted of child seduction, a crime that recognizes the significant harm involved when the perpetrator stands in a position of trust to the victim. Mother had no reservations leaving her children in Nolan's care when she worked, yet Nolan committed his crimes while alone with his step-daughter. Further, Nolan appears

17

to have groomed K.F.D. over a five year period to submit to his sexual desires, beginning with massaging her, professing love for her, engaging in oral sex, and finally rape. The mental and emotional effect of such acts upon K.F.D. cannot be minimized. Accepting Nolan's arguments would diminish the significance of Nolan's acts. Nolan's sentence is therefore not inappropriate in light of the nature of his crimes.

We also conclude that Nolan's character is not a basis to revise his sentence. Nolan points to his lack of criminal history. It appears that the trial court acknowledged this, yet also found that Nolan had exploited K.F.D.'s adolescence "in the most despicable and contemptible ways." (Appellant's Addendum pp. 3-4). Also, Nolan had four battery charges pending against him at the time of sentencing as well as additional uncharged conduct concerning K.F.D. Finally, Nolan was noted to be a "master manipulator" and bragged about his abilities as a liar. The absence of Nolan's criminal history coupled with other aspects of his character does not convince us that his sentence is inappropriate. We therefore decline to disturb his sentence.

CONCLUSION

Based on the foregoing, we find that (1) the admission of the K.F.D's letter and testimony regarding Nolan's sexual fantasy did not constitute fundamental error; (2) witnesses' testimony corroborating the victim's testimony did not amount to fundamental error; (3) the trial court did not abuse its discretion by admitting evidence of Nolan's prior bad acts; and (5) Nolan's sentence is not inappropriate.

Affirmed.

18

FRIEDLANDER, J. and MATHIAS, J. concur