**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 24 2013, 6:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PETER L. BOYLES**
Rhame & Elwood
Portage, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRISTOPHER BATTISHILL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 64A05-1211-CR-589 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable William E. Alexa, Judge
Cause No. 64D02-1204-FC-3371

**July 24, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Christopher Battishill (Battishill), appeals his conviction for one Count of intimidation, a Class C felony, Ind. Code § 35-45-2-1, and one Count of disorderly conduct, a Class B misdemeanor, I.C. § 35-45-1-3.

We affirm.

## ISSUES

Battishill raises four issues on appeal, which we restate as follows:

(1) Whether the State presented sufficient evidence of probative value to sustain his conviction for intimidation;

(2) Whether the trial court properly excluded Battishill's YouTube video depicting a prior arrest of Battishill;

(3) Whether Battishill's conviction was subject to mandatory minimum sentencing; and

(4) Whether the trial court abused its discretion when it failed to advise Battishill of his right to allocution prior to his sentencing.

## FACTS AND PROCEDURAL HISTORY

On March 31, 2012, Battishill's mother, Karen Carlson (Carlson), contacted the Porter County Sheriff Department and reported that Battishill was acting erratically and was concerned for his well-being. She told the Sheriff's department that Battishill had been making delusional statements and had threatened her life. Not knowing where the house was, Officer Brian Gill (Officer Gill) and Sergeant Mathew Edwards (Sergeant

Edwards) followed Carlson to Battishill's residence. When Officer Gill and Sergeant Edwards pulled up on the drive way, Battishill came out of the house, started waving his hands in the air, and started screaming nonsensical statements. He thereafter ran back to the house, locked himself in, and barricaded the door. Officer Gill and Sergeant Edwards went to the front door and attempted to speak with Battishill. They knocked several times. They could hear Battishill breaking things inside and shouting. He was screaming that he was the reincarnation of Jesus Christ and that his mother, Carlson, was the devil. He also made a comment that if Officer Gill and Sergeant Edwards entered the house they would have to kill him because he was going to kill them.

At that point, Officer Gill and Sergeant Edwards felt that Battishill was a threat to himself or to someone else and they decided to enter the house. They obtained a key from Carlson and attempted to open the door but were unable to since Battishill had barricaded the door. Sergeant Edwards then instructed Officer Gill to go around the house to the back door and see whether he could gain access to the house there. Meanwhile, Sergeant Edwards remained at the front door. Sergeant Edwards once again tried opening the front door. He lunged into it and this time, the door flung open. When Officer Gill heard the commotion, he ran back to the front of the house and found that Sergeant Edwards and his K-9 partner, Joker, were already in the house.

As soon as he got in, Sergeant Edwards observed that Battishill was standing with his "body bladed with his left hand behind his back, holding some kind of silver object protruding out of the back." (Transcript p. 110) He noticed that the object was a samurai

3

sword. Upon seeing this, Sergeant Edwards released Joker. Joker lunged at Battishill and bit his left arm. The samurai sword fell on the ground. Sergeant Edwards then proceeded to handcuff Battishill. Battishill refused and a tussle ensued between him and Sergeant Edwards where he also tried to bite Sergeant Edwards' right hand. Battishill was later transported to Porter County Hospital, where he continued making delusional statements and became uncooperative. He began thrashing around, punched two of the security guards, punched Officer Gill, and kicked Sergeant Edwards in the hand.

On April 2, 2012, the State filed Information, charging Battishill with: Count I, intimidation, a Class C felony, I.C. § 35-45-2-1; Count II, disarming a law enforcement officer, a Class C felony, I.C. § 35-44-3-3-5; Counts III and IV, battery, Class D felonies, I.C. § 35-42-2-1; Counts V and VI, battery, Class A misdemeanors, I.C. § 35-42-2-1; Count VII, resisting law enforcement, a Class A misdemeanor, I.C. § 35-44-3-3; and Count VIII, disorderly conduct, a Class B misdemeanor, I.C. § 35-45-1-3.

On May 4, 2012, Battishil notified the court that he was going to proceed *pro se.* On June 25, 2012, the State filed a motion for psychiatric examination and a hearing was held on June 29, 2012, where the trial court appointed doctors to determine Battishill's competency to stand trial. On August 31, 2012, the trial court found that Battishill was competent to stand trial and appointed a public defender to act as a standby counsel. On September 17 -19, 2012, a jury trial was conducted. The jury found Battishill guilty of intimidation and disorderly conduct and not guilty on all other charges. On October 19, 2012, the trial court held a sentencing hearing and Battishill was sentenced to four years

4

in the Indiana Department of Correction with two years suspended on the intimidation offense. The trial court also sentenced him to 180 days for disorderly conduct. These sentences were to run concurrently.

Battishill now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Sufficiency*

Battishill contends that the State's evidence was insufficient to establish beyond a reasonable doubt his conviction for intimidation. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witness. *Perez v State*, 872 NE.2d 208, 212-13 (Ind. Ct. App. 2000), *trans denied.* We will consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *See id.* at 213. Reversal is appropriate only when a person would not be able to form inferences as to each material element of the offense. *Id.*

To convict Battishill of intimidation, a Class C felony, the State was required to establish that Battishill communicated a threat to another person, namely Sergeant Edwards, with the intent to place him in fear of retaliation for a prior lawful act. *See* I.C. § 35-45-2-1(a)(2). Battishill now maintains that the threat was conditioned upon future conduct and did not in any way place Sergeant Edwards in fear or retaliation for a prior lawful act. We disagree.

The record shows that there was sufficient evidence establishing that Battishill's threat placed Sergeant Edwards in fear. Carlson contacted the Sherriff's Department and asked them to check up on Battishill since he had been making delusional statements and had threatened her life. Officer Gill and Sergeant Edwards followed Carlson to Battishill's residence. At trial, Officer Gill testified that Battishill "also made a comment that if we entered the house we would have to kill him because he was going to attempt to kill us." (Tr. p 68). Further, Sergeant Edwards testified that:

> I observed Mr. Battishill standing with his body bladed with his left hand behind his back with some kind of silver object protruding out of the back. At that point in time, you only have split seconds. I [perceived] him to be a threat by the statement he had made that if we entered we would have to kill him or he would kill us.

(Tr. p. 110).

Battishill argues that the threat was futuristic and it did not in any way mean that he was going to act on it. In *Norris v. State*, 755 N.E.2d 190 (Ind. Ct. App. 2001), *trans. Denied,* this court affirmed a conviction for intimidation base upon Norris's threat to the victim that he was "going to get" her for having denied him custody of his children. Consequently, we conclude, that the threats were communicated within the meaning of I.C. § 35-45-2-1(a)(2), and that the State presented sufficient evidence for the jury to find Battishill guilty of the intimidation offense.

## II. *Admission of Evidence*

Battishill contends that the trial court abused its discretion when it failed to admit his YouTube video as evidence. Our standard of review in this area is well settled. The

6

admission of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court resulting in the denial of a fair trial. *Spires v. State*, 670 N.E.2d 1313, 1315 (Ind. Ct. App. 1996). In determining the admissibility of evidence, the reviewing court will only consider the evidence in favor of the trial court's ruling and unrefuted evidence in the defendant's favor. *Reaves v. State*, 586 N.E.2d 847, 857 (Ind. 1992).

In the present case, the State filed a motion in limine requesting that Battishill's YouTube video entitled 'Arrested for Videotaping the Police', be prohibited from presentation to the jury. (Tr. pp. 2-3) The video depicted a prior unrelated arrest of Battishill by the same police department. In response, Battishill argued that:

> It's a video of me being arrested for videotaping. It is an old charge from 2007. I wanted it [] I originally want it in this case, and it was denied by the judge. I couldn't even make mention of it. But that's what that is the relevance of it is the video. I was arrested for resisting law enforcement. It's the same police department. It's Porter County police. *It shows that I've had prior incidents with this police department. It helps to explain why I was barricading the door, you know, in an attempt to not having anything to do with the police. I was scared. So that's what it shows.*

(Tr. pp. 173-74). (emphasis added).

To determine the relevancy of the YouTube video, we rely on Ind. Evidence Rule 401 which provides that relevant evidence is that evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. The standard under Evidence Rule 401 is a liberal one, and an appellate court reviews the trial court's determination as to relevance for an abuse of discretion. *Jackson v. State,* 712 N.E.2d

7

986, 988 (Ind. 1999). However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *Id*. (*citing* Evid. R. 403).

We find Battishill's argument unpersuasive. He argues that the video would show why he was barricading the door. However, Battishill was not charged with refusing to open the door. Therefore, Battishill's video would not have helped in determining the issues before the trial court as being more probable or less probable under the circumstances. We, therefore, conclude that the trial court properly exercised its discretion by not admitting the YouTube video as evidence.

### III.    *Mandatory Minimum Sentencing*

Next, Battishill alleges that the trial court abused its discretion when it concluded that he was subject to mandatory minimum sentencing. Sentencing decisions are within the sound discretion of the trial court and are reviewed only for an abuse of that discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind.2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*.

Batttishill argues that the trial court abused its discretion when it relied on the pre-sentence investigation report. He argues that the report relates a "Hot Check Violation, a Class C felony", he committed between March 8, 2000 and March 9, 2000 in Green

8

County, Arkansas, and which states that he had been sentenced to a fine, court costs, and 60 months of unsupervised probation. (Appellant's App. p. 290) Battishill main contention focuses on the additional information in the pre-sentence report which stated that:

> The Green County Probation Department or Clerk's Office were unable to provide a release date, therefore it's believed his Probation was terminated on 6-4-08.

(App. p. 290).

Ind. Code section 35-50-2-2 provides in pertinent part that:

Sec. 2. (a) The court may suspend any part of a sentence for a felony, except as provided in this section []

> (b) [] with respect to the following crimes listed in this subsection, the court may suspend only that part of the sentence that is in excess of the minimum sentence, []:

> > (2) The crime committed was a Class C felony and less than seven (7) years have elapsed between the date the person was discharged from probation, imprisonment, or parole, whichever is later, for a prior unrelated felony conviction and the date the person committed the Class C felony for which the person is being sentenced.

Here, Battishill had been previously convicted for a hot check violation and ordered to serve 60 months of unsupervised probation. The additional information provided for in the pre-sentencing report stated that his probation was to be terminated on June 4, 2008. Battishill committed the current intimidation offense on March 31, 2012. Only four years have lapsed since Battishill got discharged from his probation. Even if the probation date was miscalculated, any error in calculation would not have spanned

more than three years.  Battishill intimidation offense puts him well within the seven year period, thus the trial court had to sentence him to at least two years.

Furthermore, at trial, Battshill's counsel affirmed that the information in the pre-sentence report as being correct:

> [TRIAL COURT]:  Are there any changes, corrections, or additions that need to be made in that report, or is everything in there correct?
>
> [BATTISHILL]: No changes, corrections or addition at all.
>
> [TRIAL COURT]:  Everything is fine?
>
> [BATTISHILL]:  Everything is fine.

(Sent. Tr. p 4).

Accordingly, we conclude that the trial court did not abuse its discretion by concluding that Battishill was subject to mandatory minimum sentencing.

## IV.    *Right of allocution*

Lastly, Battishill argues that his sentence should be set aside because the trial court failed to grant his counsel or himself an opportunity to speak before the trial court imposed the sentence.  I.C. § 35-38-1-5, provides in pertinent part that:

> [t]he court shall inform the defendant of the verdict of the jury or the finding of the court.  The court shall afford counsel for the defendant an opportunity to speak on behalf of the defendant.  The defendant may also make a statement personally in the defendant's own behalf and, before pronouncing sentence, the court shall ask the defendant whether the defendant wishes to make such a statement.

Battishill relies on  *Fields v. State*, 676 N.E.2d 27, 31 (Ind. Ct. App. 1997), *trans. denied*, where this court remanded the case for resentencing when the trial court did not

10

inquire of the defendant as to whether he desired to make a statement at sentencing. Here, the record shows that the following exchange occurred at the sentencing trial:

> [TRIAL COURT]: Mr. Battishill the recommendation of my probation office is that on Count I, intimidation, a class D felony, that the sentence be four years in the department of corrections [sic] with two years suspended, which is the minimum mandatory, which is what you're eligible for, with two years of formal probation. And also substance abuse and mental health evaluation and treatment. [] Do you have any thoughts or comments on that sentence, Mr. Boyles?
>
> [BATTISHILL]: Judge, we actually have witness []
>
> [TRIAL COURT]: That's fine and dandy. []

(Sent. Tr. p. 7).

While the record reflects that Battishill's counsel was afforded an opportunity to make a statement before the sentencing, Battishill himself was not given an opportunity to make a statement. However, he waived this right when he failed to pose an objection during sentencing. In *Robles v. State*, 705 N.E.2d 183, 187 (Ind. Ct. App. 1998), this court noted that a person cannot sit idly by, permit the trial court to make an error, and attempt to take advantage of the error at a later time. We find no error here and confirm the trial court's sentence.

## CONCLUSION

Based on the foregoing, we conclude that: (1) the State presented sufficient evidence to sustain Battishill's conviction for intimidation; (2) the trial court properly excluded Battishill's YouTube video as evidence; (3) the trial court properly imposed a mandatory minimum sentence for his intimidation offense; and (4) the trial court did not abuse its discretion during Batttishill's sentencing.

--

Affirmed.

KIRSCH, J. and VAIDIK, J. concur